Kent, Ch. J.
The appellants claim title to lot No. 57. in Aurelius, under a deed from Benjamin Griffen, the soldier who drew the lot, and in whose name the patent issued. This deed was made on the 27th of March, 1784, and was drawn on the back of the original discharge, and though no consideration was expressed in the deed, yet the appellants have averred and proved a valuable consideration given. The respondent claims under a subsequent conveyance from the same soldier; and the sole question is, whether the appellants are entitled, under the first deed, to the relief prayed for by their bill.
It is not pretended that the respondent is a bona fide purchaser without notice. It is in proof that he purchased with a knowledge of the assignment to Birch, under whom the appellants claim; but the defence is, that the soldier’s deed to Birch was not sufficient, in law or equity, to entitle him to the land, or, at least, to any greater interest than a life estate.
The Onondaga commissioners appear to have thought otherwise; for they awarded that the equitable title was in the appellants, and that the respondent held in trust for them. After a car ful consideration of the case, I am of the same opinion.
When the soldier assigned over his right to Birch, in 1784, he had no legal title. He had only an equitable claim upon the state, founded upon the concurrent resolution of the legislature, of March, 17 83. It was not requisite, therefore, that he should make use of the same formal and technical conveyance that would have been proper, if he was conveying an estate in fee. It was only an assignment of an equitable interest, and it was sufficient *512 ■ if he used words that denoted clearly and explicitly his intention. The deed here was on the back of his discharge, and it declared Birch was entitled to all the lands that he was entitled to, either from the state or continent, for his services as a soldier. T’his was a full declaration of trust. No person could possibly ' mistake its meaning; and there is no just pretence that it was not fairly procured, and for a price that was, at that day, deemed an adequate consideration. It is probable that a large portion of the titles to the military .lands were originally assigned in the same brief manner. It was an authority to the assignee to receive the patent to his own use ; and if the law had not afterwards directed the letters patent to issue, in all cases, in the name of the soldier, this authority would no doubt have been deemed suffi- . cient .to have procured the patent in the name of Birch, or his assignee; The issuing of the patent in the name of the soldier did not invalidate the equitable claim of Birch; for the soldier took it as trustee to the party to whom the equitable interest . had been transferred.
The act of the 6th of April, 1790, expressly provided that “ all grants, bargains, sales, devises and other dispositions” of the land made by the soldier, before the issuing of the patent, should be deemed valid. It also declared that the patent should have a retrospective effect, and that the land should be deemed to have vested in the patentee and his heirs, from the 27 th of March, 1783. The act of the 5th of April, 1803, went still further, and declared that the lands should be deemed to have been vested in the soldier at the time of his death, though he died before the 27th of March, 1783. These statutes were made not to devest, but to confirm and enlarge the interest which the soldier may have passed before the date of the pat ent. The statutes were made for the benefit of purchasers, and to render their titles valid in a court of law, equally as if the soldier had been seised in fee at the time of the conveyance. And ■courts of law, when any such conveyances are brought before them, are to give them the same operation as if they had been executed by the party seised; and such have been the decisions of the supreme court.
But these statutes never meant to weaken or defeat any equitable trust which may have been created by any deed competent to raise such a trust, though incompetent to convey the fee at law. The court of chancery has exclusive cognisance of cases of trust, and is charged with the duty of seeing them fulfilled ; and in doing so it acts in furtherance of the liberal pro *513 visions and intent of the statutes. Suppose that‘Griffen, instead of the deed in question, had executed a bond to Birch, and bound himself, by the consideration which it is proved he received, to convey that interest to Birch, or such other person as Birch should appoint, would not equity compel him to execute that trust ? Most undoubtedly 5 and so it was decided in a case which I shall presently mention.
There never was a greater mistake, as I apprehend, than the supposition that this transfer of the soldier’s right to Birch is to be tested by the strict technical rules of a conveyance of land at; common law, and that Birch did not take the whole interest of the soldier, because the word heirs was not inserted in the assignment.
If Griffen, at the time, had been seised in fee of the land, as an estate at law, the argument would have had weight. But surely that formality was not necessary to pass a mere undefined claim upon the government, for Griffen had nothing else to convey but an interest in trust. That would be contrary to all the rules relative to the creation or assignment of a trust. The act of 28th February, 1789, on this very subject, is sufficient to justify a contrary conclusion; for that act directs the commissioners of the land-office to require from each soldier entitled to bounty lands, an assignment of his claim to lands under any act of congress, to the surveyor-general, for the use of the people of this state. There is no particular form of an assignment given, nor any thing intimated about a conveyance with the usual and apt words of inheritance. No doubt such an assignment, as the one in this case, would have been deemed sufficient to vest this state with the interest in the .soldier’s claim upon congress, and I am persuaded, that if the fact were investigated, no more formal assignments were taken.
It is a well settled principle, that no particular form of words is requisite to create a trust. The intent is what the courts look to. (2 Fonb. 36. note. 3 Ves. jun. 9.) A trustee or cestuy que trust will take a fee without the word heirs, when a less estate will not be sufficient to satisfy the purposes of the trust. This has been frequently ruled in chancery, and the court of K. B. during the time of Lord Mansfield, made the same decision at law. (2 Atk. 72. 578. 1 Ves. 491. Amb. 93. 3 Burr. 1684.) In Moorecroft v. Bowding, (2 P. Wms. 314.) A. purchased an estate in the name of a third person, who gave a bond to convey it to such person and uses as A. should appoint; and the lord chancellor held that the third person was a trustee to A., who had, in *514 equity, a specific right to the land, and he was decreed to convey. Here, a bond was held sufficient to create a trust in fee. But what puts this point beyond all doubt, is the doctrine of the common law on the subject of uses and trusts. Before the statute of uses, if a man had bargained and sold his land for a valuable consideration without inserting the word heirs, the court of chancery would have decreed an execution of the use in fee, because the use was merely in trust and confidence, and because this was according to the conscience and intent of the parties. But after the statute of 27 Hen. VIII. as the uses were transferred and made the legal estate, a different rule took place. (1 Co. 87. b. 100, b.) ,A trust is merely what a use was before the statute of uses. It ' is an interest resting in conscience and equity, and the same rules l apply to trusts in chancery now which were formerly applied to v uses. And in exercising its jurisdiction over executory trusts, the court of chancery is not bound by the technical rules of law, but takes a wider range in favour of the intent of the party. This principle seems to be well established, and it has been ably vindicated by Fonblanque. (Vol. 1. 396. note. 400. note. Vol. 2. 18.)
To apply, then, this doctrine to the present case; the soldier, after the assignment of his claim upon the state to Birch, and after the issuing of the patent in his name, became seised in trust for Birch, or those to whom Birch had assigned his interest; and instead of dismissing the appellants’ bill, the court of chancery ought to have decreed an adequate legal conveyance to be made by the defendant to the appellants. The defendant purchased of Griffen knowing of the assignment, and, therefore, he was a purchaser chargeable with the trust, and as much bound to execute the trust as the soldier himself. The clearest justice, and clearest principles of a court of equity are in favour of such a decree.
A good deal was said, upon the argument, about the statute of frauds, but it appears to me that the objection is wholly inapplicable. This is not a case of an agreement about the sale of lands ; it is a complete assignment by deed of an equitable claim; and the 12th section of the act (sess. 10. c. 44.) says, that all declarations or creations of trust, or confidence, of any lands, shall be proved by some writing, signed by the party enabled to declare the trust.
My opinion, accordingly, is, that the decree ought to be reversed.
Spencer, J.
having formerly given an opinion, and being re *515 lated to one of the parties, did not sit or give any opinion in the cause.
It being the unanimous opinion of the court that the decree of the court below ought to be reversed; it was thereupon ordered, adjudged and decreed that the decree of the court of chancery be reversed; that the respondents be decreed to convey the premises, in the bill of complaint mentioned, to the appellants, and that the respondent be enjoined from further proceeding at law upon the deed from Benjamin Griffen, as set up in his answer in the court below, and that the record and proceedings be remitted, &c.
Judgment of reversal.