### ANDREW FRENCH *vs.* GEORGE FRENCH.

No deed is valid to pass real estate under the statute of February 10, 1791, unless it be signed by two or more witnesses.
But a deed signed by only one witness may, in certain cases, operate as a cove-nant to stand seized, or as a bargain and sale, and thus pass the estate.
The statute of 27 *H* 8, *cap.* 10, has been adopted in this state.
If a consideration of blood appear upon the face of the deed, it is sufficient to raise a use, although blood be not particularly expressed as the consideration.

THIS was a writ of entry, in which the demandant counted upon his own seisin of land in Pembroke, in this county, and upon a disseisin by the tenant ; and was submitted to the decision of the court upon the following facts :

The tenant, being seized of the demanded premises, on the 13th January, 1812, made and executed a deed as follows :

" Know all men, that this indenture of lease witnesseth,
" that I, *George French*, of Pembroke, &c. do hereby lease,
" and release, and quit-claim to my honored father, *Andrew*
" *French*, the use and improvement, during his natural life,
" of that half of his farm, which he hath this day given a
" deed of to me : the true meaning of this is, that I, the
" said *George*, shall not convey the land, he hath given me
" a deed of, during his natural life.

" Dated Pembroke, Jan. 13, 1812.

" GEORGE FRENCH, & seal.

" Attest— NATHANIEL HEAD."

The land, to which the said deed relates, is the land demanded.

*S. Fletcher*, for demandant.

This case, as stated above, is reduced to very narrow limits. The only appropriate inquiry is, whether, by any legal construction, the deed recited can be holden to pass a freehold from the grantor to the grantee. We state the question thus, because it is a settled rule of law, that every instrument shall be construed, if it be legally possible, so as to operate, and effect the intention of the parties.

Can this deed, then, be legally construed to transfer a freehold interest from the tenant to the demandant ?

Before entering upon the discussion of this question, we take the liberty to anticipate the objections of the tenant against the deed ; which we apprehend to be, that there is but one subscribing witness, and that it does not express any consideration.

In support of the first objection, it will doubtless be insisted, that since the statute of February 10, 1791, entitled *" an act declaring the mode of conveyance by deed,"* two subscribing witnesses are necessary to a deed creating a freehold.

Now the statute mentioned, so far as it relates to the requisites of a deed, is very nearly a transcript from the provincial act of 1701, entitled *"an act for recording deeds and conveyances."* The object of the legislature seems to have been to authorize a new mode of conveyance in those cases, which required an *actual livery of seisin.* It is provided, that all deeds, executed in the manner prescribed, and acknowledged and recorded in the publick registry, shall be valid to pass the title to lands, *without any other act or ceremony in law whatever.* And it is not material to inquire, whether the conveyance, thus provided, was intended to *take the place* of that by livery of seisin, or whether it is only a new and concurrent mode of transferring an estate in lands. In either case it has the same extent of operation, and cannot be taken to include conveyances, which require *no act or ceremony in law.*

That this was the object of the legislature is rendered probable by the circumstances of the case. The colonists

brought with them the law of real estates in England, where lands are never sold, except in small quantities, and in the vicinity of the contracting parties, and of tenants, who might be conveniently called to witness the livery of seisin. But here they found themselves possessed of an unbounded territory, which constituted nearly all their wealth, and became their principal article of barter and sale. Their lands were remote, not only from the parties, but from every body else capable of witnessing the conveyance. This change in their circumstances would readily suggest an alteration in the law of conveyances, and such an alteration as we say was contemplated by the act of 1701.

This position is fully supported by the construction given in Massachusetts to their statute of 1783, which corresponds with ours of 1791. They say, that *enrolment*, or a deed acknowledged and recorded, is substituted in place of livery of seisin, and is equivalent to it. 6 *Mass. Rep.* 152, *Higbee et al. vs. Rice.*—4 *ditto* 24, *Marshall vs. Fisk.*—7 *ditto* 384, *Pray vs. Price ; and* 494, *Knox et al. vs. Jenks.*

But there were other estates, and other conveyances, which did not require livery of seisin. The doctrine of uses and trusts had been carried to the highest degree of refinement, and had become as familiar as any other doctrine in the English law. And since the statute of 27 *Hen. VIII.* vesting the legal estate in the *cestui que use,* conveyances to uses, and covenants to stand seised to uses, had become common, and convenient ; inasmuch as they did not require any ceremony in law. All the formality required in creating a use was a deed in writing, signed by the grantor. No witnesses have ever been necessary, and livery of seisin could not be made, because the *cestui que use* took by the deed only an equitable interest, the legal estate remaining or vesting in another person. This point is so fully settled, that no other than a very general reference to authorities can be expected. 1 *Cruise's Dig. tit. " Uses and Trusts."*—7 *Guil. Bac.*—2 *Fonbl. on Eq. and Shep. Touch. same titles.*

The deed in this case then, considered as a covenant to stand seised to uses, is in no way affected by the objection stated ; but is executed with sufficient formality to create

in the demandant the equitable and beneficial interest in the freehold, the legal estate in which is executed in him by the statute of uses.

But it has been said, in the progress of this suit, that uses and trusts are not recognised in this state ; that the law regulating them has either never been acknowledged here, or was virtually repealed by the provincial act of 1701 before mentioned. It may be proper therefore to consider more particularly the provisions of that act.

The only section, that relates to the subject in question, is the following, to wit—" That henceforth all deeds or convey-" ances of any houses or lands within this province, signed " and sealed by the party or parties granting the same, hav-" ing good and lawful right or authority thereto, and acknowl-" edged by such grantor or grantors before a justice of the " peace, and recorded at length in the records of this pro-" vince, where such houses and lands do lie, shall be valid to " pass the same, without any other act or ceremony in law " whatsoever."

And the provisions of the statute of 1791, before cited, on this subject, are substantially, and almost literally, the same as the foregoing, except that it contains the additional requisite of two or more witnesses to the deed.

That the English law of conveyances was introduced here by the colonists, cannot now admit of a question. 6 *Mass. Rep.* 24, *Marshall vs. Fisk.* If it has been so modified or altered as to exclude uses and trusts, it is incumbent on the tenant to shew it. But where is the judicial decision, that affords an authority to justify the objection ?—or where is the legislative enactment, that repeals the former law ? Is it in the statutes above cited ? These provide, that a deed of a particular description, acknowledged, and recorded, shall be valid to pass houses and lands, *without any other act or ceremony in law.* Here is no repealing clause, and it would require a forced construction, that would violate the plain and settled import of language, to extend this provision, so as to affect conveyances that required *no act or ceremony in law* to make them operative.

Were there no decisions settling the construction of these statutes, it is believed, they would now be construed to authorize or substitute a deed formally executed and recorded, instead of the ceremonious livery of seisin only, and to leave all other conveyances unaffected.

This construction is justified by other provisions in the act itself of 1791 ; by which it is enacted, " that all grants and " assignments, and all declarations and creations of trusts and " confidences, of any lands, tenements or hereditaments, " shall be manifested and proved by some writing, signed by " the party, who is by law enabled to declare such trust, " or by his last will in writing, or else they shall be utterly " void and of none effect. *Provided always*, that where any " conveyance shall be made of any lands, tenements or " hereditaments, by which a trust or confidence shall arise " or result by the implication or construction of law, to be " transferred or extinguished by an act or operation of law, " then and in every such case, such trust or confidence shall " be of the like force and effect, as the same would have " been if this act had not been made."

The same provision, verbatim, is contained in the provincial act of 1719, entitled " *an act for preventing of frauds and perjuries*" ; and also in the English statute of *frauds and perjuries.* 29 *Car.* 2.

Now the demandant maintains, that the section above recited recognizes and regulates conveyances to uses, which are implied in the terms *trusts* and *confidences.* And such is the construction given to the statute of frauds, (29 *Car.* 2,) which exactly agrees with the section above quoted It is laid down in 7 *G. Bacon* 89, that before the statute of frauds, parol declarations of uses was good ; but that since, uses are created by writing without seal. If then the statute of frauds is holden in England to authorize and regulate uses, how is it, that the same statute enacted here can be holden to repeal and abolish uses altogether ?

From this comparison of the different statutes supposed to affect the question in discussion, the conclusion is unavoidable, that the law of uses is still in force ; for if the 29 *Car.* 2, which, it is seen, has been construed to regulate convey-

ances to uses, were repealed by the act of 1701, it was restored by that of 1719, and is perpetuated by that of 1791. So that we may now say, as has been said in England, that " uses, even since that statute, may be declared by writing " only, without seal," and certainly without witnesses, which the statute does not require.

But we need not rely on the construction given to the English statute of frauds, nor on the supposed intention of the legislature in passing the foregoing acts. There is ample authority to this point in the decisions of the supreme court of Massachusetts. And their decisions on this subject are entitled to great consideration in this state, because they have the same statutes ; ours being mere transcripts of theirs, with hardly a verbal alteration.

In *Prescott vs. Tarbell*, (1 *Mass. Rep.* 204,) uses are expressly recognized, and are spoken of as being well understood to be in force in that state. Also, in *Newhall vs. Wheeler*, (7 *Mass. Rep.* 189,) the same doctrine is advanced, and not a doubt of its correctness is intimated in the course of the trial. The same may be said of *Wallis, Ex'r. vs. Wallis*, (4 *Mass. Rep.* 135.) This was an action of assumpsit to recover back $400, the consideration mentioned in a deed from the defendant to the plaintiff, conveying certain lands to the plaintiff, his heirs and assigns, *to have and to hold after the death of the grantor*. The action was holden not to lie ; " but," says C. J. *Parsons*, in delivering the opinion of the court, " fortunately for the grantee, he is mistaken in the " construction of his deed. For although it is true, that by " a common law conveyance, a freehold cannot be conveyed " *in futuro* ; yet, by a covenant to stand seised to uses, such " conveyance can be effected. And every deed ought to be " construed, if it be legally possible, so as to effect the in_ " tent of the parties. This conveyance is, therefore, to be " considered in law, as a covenant by the grantor to stand " seized of the land, to his own use during his life, and, after " his decease, to the use of the grantee and his heirs."

Decisions of similar import are contained in the New-York Reports. See 10 *John*. 456, *Jackson, ex dem. Salisbury et al. vs. Fisk et al.* and 495, *Fisher et al. vs. Fields*.

But there is a case decided by this court, that is decisive of the question. It is *The New Parish in Exeter vs. Odiorne et al.* (1 *N. H Rep.* 232.) In this case, the court say, " The " law respecting uses and trusts, as modified by the statute " of the 27th of *Hen. VIII*, was received, and has been in " practice as the law of this state, from the first organiza- " tion of its government, so far as the nature and powers of " our judiciary establishments could carry it into effect."

No authority can be more directly in point, or more full and conclusive. It is holden, therefore, to be proved, that the law of uses is in force in this state, and that the deed in this case, so far as it respects the formality of its execution, is a good covenant to stand seized to uses.

The principal inquiry that remains to be made is, whether, in a covenant to stand seized to uses, it is necessary to express any consideration ?

It is admitted to be well settled, that a use will not arise without a consideration, either expressed, or implied, or proved to have existed ; but it is maintained, that no consideration need be expressed in the deed.

The rule, that a use will not arise without a consideration, is said to have originated in chancery, on the ground, that a court of conscience could not enforce a *donum gratuitum.* 7. *G. Bac.* 97, *note.* But it must have been immaterial whether that consideration were expressed in the deed, provided that it did in fact exist. And that it did exist, may be proved by evidence foreign from the deed. It is a well known rule, that a deed of bargain and sale must be supported by a valuable consideration ; but it is settled beyond controversy, that the consideration may be proved by parol evidence. Now these cases are analogous. And in either case, if it appear that there existed a consideration sufficient to move the grantor to make the conveyance, it is not a *donum gratuitum,* and the court will adjudge it valid.

If, then, it appear in this case, either from expressions in the deed, from the admission of the parties, or from any legal evidence, that the grantor was moved by any good consideration ; or that he stood in such a relation to the gran-

tee, as in law implies *affection*, a use arises to the cestui que use, although no consideration be expressed in the deed.

In support of this position, the demandant submits the following authorities :

If a father makes a feoffment to a stranger without any consideration, the use results to himself ; but if made to his son, no use results to himself, because blood is a sufficient consideration to vest the use in the son. 1 *Cru.* 477.

So, if a man covenant to stand seized to A, his wife, the consideration that she is his wife will raise a good estate to her ; for the law implies a good consideration in the relation of husband and wife. 7 *G. Bac.* 99. And in the case, before cited, of *Wallis vs. Wallis*, it was admitted, that the parties were father and son ; and C. J. *Parsons* says, " In this case, " besides the valuable consideration expressed, a considera- " tion of natural affection may be averred as consistent with " it ; *for the consanguinity of the parties, though not mentioned* " *in the deed, is agreed in the case.*"

This position is more fully supported in 2 *Fonbl. on Eq.* 26, *note h.*, where it is said, that " though a consideration be " absolutely requisite to the raising of an use, upon a cove- " nant to stand seized, yet no consideration need be men- " tioned in the deed ; but if the cestui que use stand in a " relation, which affords of itself a consideration, an use shall " presently arise to him ; as if a man covenant to stand " seized to the use of his wife, or brother, or any of his " kindred, this is sufficient to raise an use to them, without " any mention of a particular express consideration ; for the " love and affection between them is obvious ; which being " a consideration in itself sufficient to raise an use, the limit- " ing of the use shall be referred to such consideration." The authorities referred to are, *Gilb.* " *Uses*," 251, 252, *and Bedell's case*, 7 *Rep.* 40.

In this case, the consanguinity of the parties is expressly recognized in the deed. The grantor styles the grantee, his " *honored Father.*" And this is a relation, in which, whatever the tenant may think of it, the law presumes a natural affec- tion sufficient for a consideration to raise an use.

But aside from the consideration of blood, it is believed, that the deed would be good to raise an use, as a deed of bargain and sale ; because, in fact, the grantee paid a valuable consideration. It appears by the deed itself, and was stated by the witness at the trial, that this conveyance was in consequence of a deed of the same date, and of the same lands, from the demandant to the tenant. The two deeds are to be taken as parts of one and the same transaction. It was agreed between the parties, that the father should convey to the son the one half of his farm in fee, and, in consideration thereof, that the son should re-convey a life estate. It is, in effect, the same as if the father, in his deed, had reserved to himself an estate for his life, or, as in the case of *Wallis vs. Wallis*, had conveyed to the son to have and to hold after his decease. The whole formed but one transaction ; and it was an ordinary one. There is probably no mode of settling estates more common. The parties understand the terms of the agreement ; and either they, or some of their neighbors or friends, not always skilful in framing deeds, make out the conveyance ; which, although not drawn with technical precision, are sufficiently intelligible, and should be so construed as to effect the purposes of the agreement.

It may be objected, that the last clause of the deed explains away the force of the whole, and proves it to be merely a covenant by the son not to sell it during the father's life. But this objection, it is believed, demands but a moment's consideration. In the former part of the instrument a freehold is expressly created, by apt and suitable words ; and the operation of them is not to be defeated by forced inferences, drawn from other parts of it. The grantor acknowledges a deed from the grantee, and he undertakes to re-convey some things, that is, the use and improvement of the premises during the natural life of the grantee. It was evidently intended by the parties, that the demandant should continue to enjoy the income ; and whether they supposed, that the soil itself, and the power to control it, remained in the tenant, and that a covenant, that he would not sell it, would give additional security to the conveyance, is immaterial. The tenant undertook to convey a freehold, and the

deed contains all the necessary requisites to effect the object. It is consistent with law and equity to hold him to make good his undertaking, and he surely is estopped from complaining, that he is holden to do his duty.

*Stevens,* for the tenant.

It will be contended for the tenant,

1, That the instrument, on which the demandant founds his claim, is not such a deed, as can, at common law, convey a freehold estate.

2, That it can have no operation by the force of the statute of uses.

3, That it is not a deed conveying an estate of freehold by virtue of any statute of this state.

4, That, if it can have any operation in law, it can be no other than that of a covenant, on the part of the tenant, *not* to convey the premises in question, during the natural life of the demandant.

As to the first point, it may be observed, that the common law has, at all periods of its history, required certain modes and forms to be substantially observed in making conveyances of estates in lands. And these requisites are deemed so essential, as that a non observance of them, in the execution of such conveyances, has invariably been held to render them void and of no effect. And the instrument in question, it is believed, on examination will be found inoperative, for the want of some of these essentials. If by this writing any estate in the land passed, it must be an estate for life ; its execution, therefore, should have been accompanied with livery of seisin. By the common law this ceremony is necessary to be observed, upon every grant of an estate of freehold, in hereditaments corporeal, whether of inheritance, or for life only. *Black. Com. V.* 2, 314. Without livery and seisin, a deed of itself conveys no estate of inheritance. The grantee is a mere tenant at will—it is incident and necessary to a lease for life of lands. *Black. Com. V.* 2, 311.—*Co. Litt. Sec.* 66, 59.—8 *Rep.* 82. Anciently no charter of feoffment was necessary. The first kind of conveyance, known used in England, was by parol attended with livery ; and when the written deed or charter was first in use, it was

adopted only as an authentication of the transaction of livery and seisin ; the land was supposed to be transferred, not by the deed or charter, but by livery, of which the charter was the mere evidence. *Co. Litt. Sec.* 463.—*Lib.* 3, 271–6.—*in notis* 231. Thus it appears, that livery was deemed the very essence of a grant of an estate of freehold, and that without it a deed could have no effect.

Again, the writing in this case could have no force at common law, because it was made without consideration. This constitutes a part of the very being of a deed, it is that, which gives it life and effect—it must have been made, either on a good, or valuable consideration. 2 *V. Black. Com.* 296. The notion, that a *quid pro quo* was necessary to give validity to a conveyance of lands, seems to have prevailed from the earliest times. The most ancient feoffments were made in consideration of feudal or military services ; subsequently, however, and in more modern days, this kind of consideration has been changed and commuted for that of a pecuniary nature. *Co. Litt. note* 231.

But farther—this cannot be supported as a common law conveyance, inasmuch, as it was not executed in the presence of witnesses. That it was held necessary for the execution of a deed, to be witnessed by more than one person, is a position, that is not altogether unsupported by authority. *Jacobs*, in his Law Dictionary, under the head " deed," in speaking of the sealing and delivery of a deed, says—" and there must be witnesses to the sealing and delivery, who are to indorse or underwrite their names thereon." And refers to 1 *Inst.* 7.—10 *Rep.* 93, as authorities. The form of the ancient deed of feoffment also fortifies this point. *Vide " vetus carta feoffamenti*," *Black. Com. V.* 1, *App. No.* 1. And this position is believed not to be inconsistent with the doctrine of *Coke*, when he says in 1 *Inst.* 7, that a deed is good without the clause of *hiis testibus*, provided the grantor seal the deed, deliver it, and make livery. For it will be perceived, that he does not say, that the ceremonies, attending the execution, need not take place in the presence of witnesses, nor does he say, that it is not necessary for witnesses to indorse or underwrite their names ; he only states, that the

clause of *hiis testibus*, with sundry others, which he names and terms as the "formal or orderly parts," need not be inserted in a deed in order to render it valid.

II. The writing under consideration cannot have effect under the statute of uses. If it can be sustained at all by virtue of that statute, it must be, either, as a covenant to stand seised, or as a bargain and sale. Bargain and sale is called a real contract, made upon a valuable consideration, for passing of lands, tenements, and hereditaments, by deed indented and enrolled. 2 *Inst.* 672. It must be made for money, or money's value. *Co. Litt. note* 231. By bargain and sale of land, no use arises, unless there be a consideration of money. 1 *Bac. Ab.* 469.—*Shep. Touch.* If it be without pecuniary consideration, it is void. 16 *John. Rep.* 515. In the case of *Jackson vs. Alexander*, (3 *John. Rep.* 485,) C. J. *Kent* says, " It has been long settled, that a con-" sideration, expressed or proved, was necessary to give " effect to a deed of bargain and sale." In pleading a conveyance, under the statute of uses of this description, it is necessary to aver, that a valuable consideration was paid. *Chitt. on Plead.* 1 *vol.* 351. If these authorities are to have any weight or influence with the court, in determining this question, the demandant's deed must be declared void, as a bargain and sale, inasmuch as no consideration is either expressed or proved.

But a bargain and sale must be by " deed indented and " enrolled." The statute of 27 *Hen. VIII. cap.* 16, enacts, that a bargain and sale shall not enure to pass a freehold, unless the same be made by indenture, and enrolled, within six months, in one of the courts of Westminster Hall, or with the *custos rotulorum* of the county. This was passed at the same session of parliament with the statute of uses, and for the purpose of guarding against evils, which, under the operation of that statute, must otherwise necessarily have arisen. Under this act it has been held, that the land does not pass on the execution of the conveyance by the parties, until enrolment. And after enrolment, provided it take place within six months next after the date or delivery of the deed, the bargainee is considered as seised from the ex-

ecution, only by relation. *4 Mass. Rep.* 543.—*Com. Dig. tit. " Bargain and Sale,"* B. 9.—*2 Inst.* 674. The statute makes no provision, that a deed shall be good, not even against the grantor, without enrolment ; this seems to be a requisite essentially necessary in order to pass a freehold. Were this instrument, therefore, to be tried by the rules, which guide the courts of law in England, it could not be supported as a bargain and sale ; for the reason, that it was not recorded within six months next after its date.

Again, can this instrument operate and be sustained, under the statute of uses, as a covenant to stand seised ? To create such a covenant, it must be made in consideration of blood or marriage ; it can be supported on no other. *Blacks. Com.* 2 *vol.* 338.—*Mass. Rep.* 12 *vol.* 95.—1 *Chitt. on Plead.* 351. It must be made with the covenantee and his heirs, otherwise it is merely a personal covenant, which will not raise an use. *Com. Dig. tit. " Covenant,"* G. 1. It must contain apt words, show a manifest intent, and appear to be made in consideration of love and affection. If the words seem intended for another purpose, it does not amount to a covenant to stand seised. *Ibid.* G. 2, G. 3. The words used must be such, as to shew, that the parties intended to make blood and natural affection the moving cause of the contract, when it was entered into. The words, " my honored father," which, in this case, are relied on as evidencing, that natural affection was the consideration intended by the parties, cannot, it is apprehended, by any fair construction, be considered as plainly manifesting such to be their meaning. These terms are neither preceded nor followed by language, which would naturally lead to such interpretation. They were used by the person, who wrote the instrument, not with the view of designating the kind of consideration, on which it was founded, but as proper and suitable terms of respect, to be adopted by a son in describing the person of his father. If the language had been, " In consideration of the affection, which " I bear my honored father," &c. there could have been no doubt, the words would have been apt, and the intent plain and manifest. But if the writing in question can have no

effect, except by virtue of the statute of uses, it must, as the defendant contends, be wholly inoperative ; because that statute was never a law of the land. In order to have the force of a statute of this government, it must have been adopted, used, approved, and usually practised on, in the courts of law in this state, prior to the establishment of the constitution in 1792. For it cannot since have acquired the character of an effective statute, from the circumstance of its being occasionally cited, or commented upon, by our courts of law. Nothing short of the enacting power of the state could have invested it with a binding force. If it had been adopted, and usually practised on in the courts of law, anterior to the adoption of the present constitution, the evidence of such approbation and practice still exists ; and the party, who calls on the court to give effect to this writing by force of that statute, is bound to produce such evidence, before he can entitle himself to judgment.

If the court, however, should be satisfied, that the statute of uses ever constituted a part of the law of this state, it is then contended, that the same was virtually repealed by the act of 1791. 1 *N. H. Laws* 190.

From the very circumstance of the enactment of the law itself, it is but fair and proper to presume, that some evils existed in relation to the subject of conveyances, which required the interference and power of the legislature to remedy. New-Hampshire had then but recently become an independent sovereignty ; she would of course be inclined to legislate for herself, and lay aside every badge of dependence on a foreign power. Besides, the law of uses, as applied to the conveyances of real estate in England, had become extremely complex and intricate ; it was a system, which had originated in clerical cunning, and grown into favor by the necessity, arising from the wars between the houses of York and Lancaster—a system, which, in the old country, had been found to be a fruitful source of frauds, and, in its effects, highly prejudicial to the best interests of society, and of course one not suited to the plain and simple habits of a republican people. The legislature, therefore, proceed to

enact and declare what the rule shall be as to the mode of the execution of every description of conveyance of any estate in lands, whether it be by deed of feoffment, bargain and sale, or covenant to stand seised, all, it is contended, were to be subject to the same prescribed rule, as it respected the *manner* of their execution. Their object was to point out the requisites necessary to be observed by contracting parties, in order to constitute a good and valid conveyance ; to establish a simple and uniform rule, for the guidance of the good people of this state, in one of the most common, but most important, of their every day's transactions ; a rule, which should be within the reach and comprehension of the lowest and most ordinary capacity. But it is argued on the part of the demandant, that the legislature recognized the statute of uses, as being in force here, from the circumstance of their adopting the words " bargain and sale." How an argument, drawn from this source, can have much weight, is difficult to comprehend. It was necessary for the enacting power to use appropriate words in describing a deed of conveyance, and these were adopted, as being the most fit and proper, and not because they described a conveyance, mentioned in the English statute of uses. That statute did not create these terms ; they had long been in use before its existence, and were applied to all grants, made by parol at common law for a valuable consideration. It is believed, that the legislature, in framing the second clause of the fourth section, contemplated the same and no other kinds of conveyances, than what had been named in the first clause of the same section. The language, to be sure, is somewhat different ; but that change of language was for the purpose of embracing the different language of different persons, in describing the same instrument ; and if so, then the word " deed" used in the former, and words " deed of bar-" gain and sale," adopted in the latter part of the section, were intended to mean one and the same species of conveyance If the English deed of bargain and sale is recognized in the latter sentence of the section, and can be operative, without having two subscribing witnesses, and for the reason, that it is not mentioned in the former part of the section ; by

the same rule of construction, the " deed," mentioned in the first clause, need not be regarded to give it validity, because it is not described *eo nomine* in the last clause. And, by a like mode of construction, the conveyance by mortgage, enumerated among the second catalogue of conveyances contained in the section, need not be subscribed by two witnesses, inasmuch as it is not expressly named in the first. But this, it is apprehended, would not be giving effect to the true intent of the legislature. It would seem to be a more natural and proper exposition of the statute, to say, that all conveyances, expressly named in the latter and not in the former part of the section, were intended to be included in the description " or other conveyances" used in the first. And all deeds specially described in the former, and not in the latter, were intended to be embraced by the words " or oth- " er conveyances" in the last clause. If the statute of uses was in full force and operation here, and was so to continue, why should the legislature enact a law, enacting an additional mode of conveyance ? It certainly could not be for the interest of the people to have the modes of transferring real estate multiplied, and for the reason, that it would tend to render the law upon that subject, to them, more uncertain and unintelligible, and lay the foundation for the increase of litigation. But that the legislature could not have intended, admitting the statute of uses were in force in this state, so to continue it, is apparent from the title of the act of 1791, " prescribing *the mode* of conveyance by deed." " If the " words of the enacting part of a statute be doubtful, they " may be explained by the title or preamble." *Willes* 395, *Colchan vs. Cooke.* The language of the title is of the definite character ; it precludes the idea of there being any other mode, than what the act was to point out. Suppose the title had been, " an act declaring what the mode of conveyance " by deed shall hereafter be," would it, in effect, have been other or different from what it now is ? And can there be much doubt, if such were its title, that by a fair and legal construction, it would render the act a repealing one, as to all laws of conveyance existing at the time of its enactment ? The title shows, that there was, either no settled mode of

conveyance in being, or that different ones prevailed ; and, in either case, it was the duty of the legislature to prescribe the mode, as they have done. The doctrine contended, under the second position, is fully supported by the case of *Thompson vs. Bennet*, settled at the November law term, Strafford county, 1813, unless that case is misunderstood.

III. The writing, under consideration, is not such a deed, as to convey an estate of freehold, by virtue of any statute of this state. It cannot be sustained or have effect as a statutable conveyance, because it is not signed by two or more witnesses. 1 *N. H. Laws* 190. The statute of 10th February, 1791, requires five things to be observed, in order to constitute a good and perfect deed. 1. It must be signed by the grantor. 2. It must be by him sealed. 3. It must bear the attestation of two or more witnesses. 4. It must be acknowledged by the grantor before a justice of the peace. And, lastly, it must be recorded in the county registry of deeds. The object of the acknowledgment being merely to furnish the register with more perfect evidence of the execution ; and that of the recording for nothing more than to give greater notoriety to the transaction ; an observance of them is not, by the statute, made necessary, in order to render a deed binding upon the grantor, or his heirs ; he is presumed to be conusant of his own conveyances, and his heirs must be bound by his acts.

The three first requisites, however, are essential ; and an omission of either one of them renders the deed, not only not of any effect, even against the grantor and his heirs, but absolutely void. *Thompson vs. Bennet, November law term,* 1813, *Strafford county.*—2 *N. H. Rep.* 441, *Chamberlain vs. Smith.*

IV. The parties did not intend to pass an estate of freehold by virtue of the instrument under consideration, but to bind the tenant not to alienate the premises, during the natural life of the demandant.

That it was designed as a mere covenant, not to convey, is perfectly manifest from the writing itself ; it carries on its very face express evidence, that such was the only intent. Its language is, " the true meaning of this is, that I, the

" said *George*, shall not convey the land, that he (the demand-
" ant) hath given me a deed of this day, during his natural
" life." If this clause of the instrument be considered by
itself, independent of any other part, there can be no doubt
as to the meaning of the parties ; the language is plain, intel-
ligible, and unambiguous. And although the commencement
of the writing contains words appropriate to a conveyance of
an estate in lands, and, therefore, in some degree contradic-
tory with the conclusion, still, if upon the whole view of the
case, the intent of the parties appears to be other, than to
convey, that intent must prevail. The intent of the parties,
when apparent and not repugnant to any rule of law, will
control the technical words of an instrument ; for the intent,
and not the words, is the essence of every agreement. *3 John.
Rep.* 383, *Ludlow et al. vs. Myers.*—1 *T. Rep.* 735.—2 *T.
Rep.* 739.—6 *East* 630.

This writing seems to present an ambiguity, that belongs
to what is called an intermediate class of cases, partaking
both of the nature of patent and latent ambiguities. The
language, adopted in the former part of the instrument ap-
pears sufficiently apt to convey an estate for life, and that
used in the latter part is equally appropriate to show, that
the intention of the parties was not to grant such an estate,
but merely to restrict the tenant in the exercise of the right
of alienating the premises, during the life of the demandant.
If this be an ambiguity of the intermediate class, there is not
the same necessity, in settling the construction, of being
confined to the words of the instrument, as if it were purely
patent ; but matters *dehors* the deed, may be considered,
and if necessary, be shown by parol evidence.

In the case of *Push vs. Dickson*, (1 *Mason Rep.* 10,) Judge
*Story* says, " there is an intermediate class, partaking both
" of the nature of latent and patent ambiguities, and that is,
" when the words are all sensible, and have a settled mean-
" ing, but, at the same time, consistently admit of two inter-
" pretations, according to the subject-matter in contempla-
" tion of the parties, and that in such cases parol evidence
" may be admitted to show the circumstances, under which
" the contract was made."

In accordance with this principle, the facts, that the instrument was witnessed by one person only, and not acknowledged, may be considered as creating a strong circumstance to show, that the parties did not intend thereby to pass a freehold estate, and more especially, when it is considered, that the person, who wrote and witnessed the writing, was himself a magistrate, and in the habit of making out deeds of conveyance. The doctrine, that one subscribing witness is sufficient to give validity to a deed of conveyance of lands, is believed to be at war with the common sense and understanding of the community. The notion, that two or more witnesses are necessary to constitute an effective deed, pervades every class in society. This, then, is also a circumstance tending to show, that the intent must have been other than to convey an estate in lands. Again, the peaceable and quiet possession and occupancy of the premises, on the part of the defendant as tenant in common with the plaintiff, from the day of the execution of the contract, till within two years of the present time, may also be properly urged in support of the same principle or construction. In the case of *Livingston vs. Ten-Broek*, (16 *John. Rep.* 14.) Judge *Spencer* says, " possession may be resorted to, in explanation of the " intention of parties, where the words of a deed are equiv- " ocal." Judge *Buller* also said, in the case of *Blankley vs. Winstanley et a.*, (3 *T. Rep.* 288,) " that there were ca- " ses, in which the court of King's Bench had held, that a " settled usage would go a good way to control the words of " a charter ;" and this principle is equally applicable to private deeds, as to charters from the crown. 6 *T. Rep.* 388, *Wethnell vs. Gartham.*

But it may be said, that deeds must receive such constructions, as to operate beneficially to the grantees, and that they are to be declared void, unless they can be so interpreted as to secure such benefit. And to this principle, no objection is made, nor does the defendant's case require, that it should be contested ; because the construction, upon which he insists, protects the plaintiff in the enjoyment of real and substantial benefits. It appears, from the instrument under examination, that the demandant, on the day of its execution, had

conveyed to the tenant, (son of the demandant) an undivided moiety of his homestead farm ; by which conveyance, the son became tenant in common with his father. The father, undoubtedly, as it was natural that he should, felt a strong desire, that his son should continue to be such tenant in common : it was more for his interest, and must be much more congenial with his feelings, to have one of his own blood thus connected with him, than to have a stranger, one not under the influence of natural affection. He had advanced to his declining years, and was in need of some one to assume, and relieve him of his cares, and to manage his concerns. And all this the tenant placed himself in a situation to do. In doing it, however, he gained nothing to himself, but yielded up a valuable right, that of disposing of his estate during a life, while he secured to the demandant important advantages.

GREEN, J. It is contended by the defendant, that from the last clause in the instrument, under which the plaintiff claims, it is evident, that nothing was intended to be passed ; but that the instrument was designed merely as an engagement not to sell the premises during the plaintiff's life.

The case shews, that the contract was between a father and son, and that the father, at the time of its execution, gave a deed of the same land to the son.

A practice has long prevailed in this part of the state, for parents, in the decline of life, and who wish to settle their worldly concerns, to give to the child, with whom they expect to live, and be supported in old age, a deed of their farm, taking back a lease of the same during their lives ; and from what has been before us relating to this transaction, we entertain no doubt, that such was the intention and object of the parties in this case.

Upon this supposition, the instrument in question must have been designed to benefit the father, by securing to him a resort, in case the son should prove undutiful and refractory ; but admit that it was a mere engagement not to sell the property in the life time of the father, and nothing more ; in that case, it would be as much in the power of the son to deprive the father of any benefit from the farm, as though no

French
vs.
French.

contract had been entered into on the part of the son ; and he might take the farm exclusively to himself, and leave the father destitute of any support from that source.

The obvious duty of the court is so to construe instruments, as to give them a beneficial effect, if it can be done consistently with the rules of law   for it is not to be supposed, that parties will deliberately enter into stipulations, which are never intended to benefit any one, but to remain a mere idle ceremony ; and this must be the case with the instrument in question, unless we consider it, as intended by the parties, to vest in the plaintiff a life estate ; and such construction we feel ourselves bound to give it.

The words in the latter part of the instrument, which, the defendant contends, qualify the previous expressions, were added, we think, to render the plaintiff more secure in his life estate.

We are then to consider, whether the instrument was executed with such formalities as to pass a freehold under the statute of this state, passed February 10, 1791, entitled " an act declaring the mode of conveyance by deed," (1 *N. H. Laws* 190,) there being but one subscribing witness.

It is enacted in the fourth section of that statute, as follows, viz :—" That all deeds, or other conveyance of any " lands, tenements, or hereditaments, lying in this state, " signed and sealed by the party granting the same, having " good and lawful authority thereunto, and signed by two, or " more witnesses, and acknowledged by such grantor or gran- " tors, before a justice, and recorded at length in the regis- " try of deeds, in the county where such lands, tenements " and hereditaments lie, shall be valid to pass the same, with- " out any other act, or ceremony in law whatever."

No doubt can be entertained, that all conveyances, comprehended within this section of the statute, must be signed by two witnesses at least, in order to render them valid—the statute is peremptory in this particular, and it follows, that the plaintiff, by virtue of the instrument in question, can derive no title under this statute.

It is equally clear, that it cannot have effect as a conveyance at common law, the formalities, required in such cases,

not having been complied with ; and unless the law in relation to uses and trusts can be applied to his case, he is without remedy. Is then the law of uses and trusts a part of the law of this state ?

It has been suggested by the counsel for the defendant, that this question was agitated, and with much deliberation settled, in this state, at the November term of the supreme court, Strafford county, 1813, in the case *Thompson vs. Bennet*, and in recurring to the 2d *vol. N. H. Rep. p.* 440, in the case *Smith vs. Chamberlain*, we find this decision adverted to. —The present suit was continued at the last term, with a view to our being furnished with the opinion of the court in that case, and it is much regretted, that the defendant's counsel has not been able to obtain it—the source, in which it originated, would have entitled it to great consideration, and no doubt, we should have been supplied with much useful matter to our assistance.

But from some extracts, to which I have had access, it appears, that the foundation, on which that decision principally rested, was, that the law of uses and trusts (if ever in force in this state) together with the methods of conveying at common law, were all superseded by the statutes of 1701 and 1791.

As respects the question whether those laws were ever in operation here ; it was said by Justice *Bell*, in delivering the opinion of the court, in the case, (*New-Parish in Exeter vs. Odiorne et al.* 1 *N. H. Rep.* 237,) "The law respect-"ing uses and trusts, as modified by the statute of 27 *Hen.* "*VIII.*, was received, and has been in practice as the law "of this state, from the first organization of its govern-"ment, so far as the nature and power of our judiciary "establishments would carry them into effect."

Our ancestors, in emigrating to this country, brought with them the different methods of transferring real estate, which prevailed in the mother country ; and such parts were adopted as were not inapplicable to their new situation As the conveyance to use was quite as simple and free from formalities as the other methods of transfer, perhaps no one

could have been selected, out of those then existing, better adapted to the infant state of the colony.

From all we have been able to collect on the subject, we are persuaded, that the law of uses and trusts was received as part of the law of this state, as soon as the government was organized, and, unless superseded by some of our local statutes, must still be in operation here.

That it has been thus superseded, is insisted on the part of the defendant. It is said, that this species of conveyance, with those at common law, were all done away by the provincial act of 1701, (*Prov. Laws* 19,) and the act of 1791, which has already been recited.

The first section of the act of 1701, is in the following words, viz. :—

" That henceforth all deeds or conveyances of any houses " or lands within this province, signed and sealed by the par- " ty or parties granting the same, having good and lawful " right or authority thereto, and acknowledged by such gran- " tor or grantors, before a justice of the peace, and recorded " at length in the records of this province, where such houses " and lands do lie, shall be valid to pass the same, without " any other act or ceremony in law whatsoever. And that " from and after three months next after publication of this " act, no bargain, sale, mortgage, or other conveyance of " houses or lands, made and executed within this province, " shall be good in law to hold such houses or lands against " any other person or persons, but the grantor or grantors " and their heirs only, unless the deed or deeds thereof be " acknowledged and recorded in manner as is before ex- " pressed."

The act of 1791, is, in substance, the same ; except that two witnesses are to subscribe the deed, in order to render it valid.

It has been impossible for me, with the utmost diligence, to discover, in this section, any expression, which has the least tendency to shew, that the method of conveyance, here pointed out, was intended to supersede all others. The evident intention and design was to free the people from the ceremony of livery and seisin in feoffments. The country

being then in a wilderness state, the ceremony of the English investiture would have been extremely inconvenient and troublesome ; and the other modes of conveying not being readily understood by the people at large, this additional one was adopted, as better suited to the state and condition of the country, but without in any degree impairing or affecting any of the others, except by requiring that *they* should be acknowledged and recorded, in order to render them effectual against third persons.

In Massachusetts, where a similar statute has existed from an early period of their government, and from which our's was probably copied, the law of uses and trusts has been recognized and practised upon, without any question as to its being superseded by that statute.

In the case of *Cox et als. vs. Edwards*, (14 *Mass. Rep.* 491, *App'x.*) Chief Justice *Cushing*, in delivering the opinion of the court, observes,

" The first clause of the act provides, that all deeds or " conveyances of houses or lands, acknowledged and record- " ed, as is therein required, shall be valid to pass the same " without any other act or ceremony ; meaning, as I appre- " hend, without livery of seisin, which was indispensable at " common law.　The next clause enacts, that no bargain, " sale, mortgage, or other conveyance of houses or lands, " shall be good to hold such houses or lands against other " persons than the grantor and his heirs only, unless such deed " be acknowledged and recorded.　Now, comparing this " with the first clause, it does seem, that the legislature in- " tended no other conveyance, than those, which the act or " ceremony of livery of seisin was necessary at common law " to render valid."

And in the same case a deed, which had not the requisites of the statute, was considered and adjudged as a covenant to stand seized to use.

In the case of *Marshall vs. Fisk*, (4 *Mass. Rep.* 24,) the same is in substance repeated by Chief Justice *Parsons*.

It has been further objected, that in cases of covenant to stand seized to uses, there must be a consideration, and as none is expressed in the instrument offered by the plaintiff, he can derive no benefit from it.

In these cases, the consideration of blood or marriage is indispensably necessary ; but it is not required, that such consideration be named in the deed ; if it can be inferred from the relation, in which the parties stand to each other, it is sufficient.

In *Fonbl. Equity, 2 vol. p. 26, note,* it is said, " Though a " consideration be absolutely requisite to the raising of an " use upon a covenant to stand seised, yet no consideration " need be mentioned in the deed ; but if the cestui que use " stand in a relation, which affords of itself a consideration, " a use shall presently arise to him ; as if a man covenant to " stand seised to the use of his wife or brother, or any of his " kindred, this is sufficient to raise a use to them, without " any mention of a particular express consideration, for the " love and affection between them is obvious, which being a " consideration in itself sufficient to raise an use, the limit- " ing of the use shall be referred to such consideration."

The other authorities on this point are conformable to the one just quoted ; and it seems not to admit of doubt, that no consideration is necessary to be expressed in the deed.

The defendant's counsel has also suggested, that from the language of the instrument, no covenant to stand seised to use can be raised, and that it is insufficient in other particulars.

Such a deed does not require *any* subscribing witness, and no technical words are necessary to create a trust. *Fisher vs. Fields,* 10 *John. Rep.* 495.

The case of *Wallis vs. Wallis,* (4 *Mass. Rep.* 135,) applies with peculiar force to this part of the case : there a deed was executed by a father to his son, to take effect at the death of the grantor ; the only consideration named in the deed was a sum of money. It was there said by Chief Justice *Parsons,* that although the deed could not operate as a conveyance at common law, yet the consideration of blood might be averred, and the instrument have effect as a covenant to stand seised to the use of himself, during his life, and after his decease, to the use of the grantee, and his heirs. Here a deed was given, and the grantor, at the same time, took back the instrument under consideration to secure a life estate ; this was but one transaction. The only difference in

the two cases is simply in form, and why the effect should not be the same, I am wholly unable to see ; but if the instrument from the defendant be considered as distinct and apart from the deed of the plaintiff, the result must be the same.  It releases to the plaintiff, during his life, the use and improvement of the premises in dispute, and the contract being between father and son, the consideration of blood may be averred.  The instrument, therefore, possesses the features necessary to render it a covenant to stand seised to the use of the plaintiff, and the use being thus raised, the statute of 27 *Hen. VIII.* for transferring uses into possession, entitles the plaintiff to possession of the premises.

RICHARDSON, C. J.  The tenant's claim to judgment in this case is rested by his counsel upon two propositions.

In the first place, he has urged, that under the statute of February 10, 1791, entitled " an act declaring the mode of " conveyance by deed," nothing will pass by a deed, unless it be " signed by two or more witnesses."

In the second place, he has contended, that every deed, which is not a valid conveyance under the said statute, is wholly inoperative.

To the truth of the first proposition, we, without any hesitation, accede.  The language of the statute is too plain and explicit to admit a doubt.  In addition to this, it is understood to have been solemnly decided in this court, at November term, in the county of Strafford, 1813, in the case of *Thompson vs. Bennet,* that a deed, attested by one witness only, was not sufficient to pass real estate under the statute. This decision was recognized as law in the case of *Smith vs. Chamberlain,* (2 *N. H. Rep.* 440,) and the correctness of it has not been questioned in this case by the demandant's counsel.

But the second proposition is so new, so extraordinary, and so repugnant to what is believed to be the general opinion of the profession on the subject, that we should not have deemed it worthy of a moment's consideration, had it not been urged upon our attention by counsel with an earnestness, which seemed to evince a deep conviction, that the proposition might be maintained.  We have thought it due to

the very able and ingenious argument, which has been urged in its support, to examine it with attention ; and we have considered it in every point of view, in which it has been presented to us. The result of our examination of the question we shall now endeavor to state.

At the common law, feoffments and grants were the usual modes of transferring property. A feoffment was defined as a conveyance of corporeal hereditaments, by delivery of the possession upon or within view of the land. No charter of feoffment was necessary ; and when it was used, the lands were supposed to be transferred, not by the charter, but by the livery. A grant, in the original signification of the word, is a conveyance of an incorporeal hereditament. As livery of seisin could not be had of incorporeal hereditaments, the transfer of them was always made by writing, in order to give to them that notoriety, which was produced in the transfer of corporeal hereditaments by delivery of possession.

The statute of the 27 *Hen. VIII. cap.* 10, commonly called the statute of uses, produced a great revolution in the modes of transferring landed property. It is, however, unnecessary to notice, on the present occasion, more than two new modes of conveyance, introduced by that statute. These are bargains and sales, and covenants to stand seised to uses.

There is no doubt, that a species of conveyance by bargain and sale existed before the statute of uses, and originated from an equitable construction of the court of chancery. A bargain was made for the sale of an estate ; the purchase money was paid ; but there was either no conveyance at all of the legal interest, or a conveyance defective at law, by reason of the omission of livery of seisin, or attornment ; the court of chancery properly thought, that the estate ought in conscience to belong to the person, who paid the money, and therefore considered the bargainor as a trustee for him. But the *cestui que trust* had only an equitable interest. The statute of uses enacted, that, " where any person or persons, " &c. stand or are seised of any honors, &c. lands, tene- " ments, &c. to the use, confidence, or trust of any other " person, or persons, &c. by reason of any bargain, sale, " feoffment, &c. such person, or persons, &c. that have any

" such use, shall be deemed and adjudged in lawful seisin, " estate, and possession thereof, to all intents and purposes, " of or in such like estates as they have in the use, &c. and " the estate, right, and possession of him and them, so seised " to any use, &c. shall be deemed and adjudged in him or " them, which have the use, &c. after such quality, manner, " &c. as they had before in or to the use." On this statute the conveyance, which has been called a bargain and sale, is founded. The bargainer contracts to sell the land, and receives the purchase money ; after this, he is, in equity, considered as seised of the land to the use of the bargainee ; and this statute unites the possession to the use, so that the very instant the use is raised, the possession is joined to it, and the bargainee becomes seised of the land. The words of transfer, applicable to this conveyance, are *bargain and sell* ; but they are by no means necessary nor material to its operation. There must be a pecuniary consideration. But if a man, for such a consideration, covenants to stand seised to the use of another person, a use is thereby raised, which the statute will execute.

*Covenants to stand seised* are another species of conveyance founded upon the statute of uses. The consideration of this conveyance is the foundation of it. The words *covenant to stand seised* are, therefore, not absolutely necessary to its operation. Uses can only be raised upon a covenant to stand seised in consideration of blood or marriage. If the consideration appear, though it be not particularly expressed, yet it is sufficient to raise a use upon this conveyance. Thus, if a man covenant to stand seised to the use of his wife, son, or cousin, without saying in consideration of natural love, the covenant will raise the use, and the statute execute it.

When our ancestors first came to this country, they brought with them and adopted the various modes of conveying real estate, then in use in England. This is very apparent from the language of several ancient statutes. Thus, a statute of the colony of Massachusetts, passed in 1652, enacted, that " henceforth no sale or alienation of houses and lands, with- " in this jurisdiction, shall be holden good in law, except the " same be done by deed in writing, under hand and seal, and

" delivered, and possession given upon part in the name of " the whole by the seller, or his attorney, so authorized, un- " der hand and seal, unless the said deed be acknowledged " and recorded according to law." *Mass. Col. & Prov. Laws* 85.

Here a feoffment is distinctly recognized, as a valid conveyance.

In 1697, a provincial act of Massachusetts declared, " that " henceforth all deeds or conveyances of any houses or lands, " within this province, signed and sealed by the party or " parties granting the same, having good and lawful right and " authority thereto, and acknowledged by such grantor or " grantors, before a justice of the peace, and recorded at " length in the registry of the county, where such houses or " lands do lie, shall be valid to pass the same, without any " other act or ceremony in the law whatever.

" And that no bargain, sale, mortgage, or other convey- " ance of houses or lands, &c. shall be good and effectual in " law, to hold such houses and lands against any other person " or persons, but the grantor or grantors, and their heirs on- " ly ; unless the deed or deeds thereof be acknowledged and " recorded in manner as is before expressed." *Mass. Col. & Prov. Laws* 303.

Here a bargain and sale is distinctly recognized as a mode of conveyance in use.

Our provincial act of the 13 *W.* 3, *cap.* 12, (*Prov. Laws* 19,) was copied *verbatim* from the said provincial act of Massachusetts, and of course mentions a bargain and sale as a mode of conveyance in use.

Our statute, entitled " an act declaring the mode of con- " veyance," *sec.* 4, which is now in force, enacts, " that all " deeds or other conveyances of any lands, tenements, or " hereditaments lying in this state, signed and sealed by the " party granting the same, having good and lawful authority " thereto, and signed by two or more witnesses, and ac- " knowledged by such grantor or grantors, before a justice " of the peace, and recorded at length in the registry of " deeds in the country, &c. shall be valid to pass the same, " without any other act or ceremony in law whatever.

" And no deed of bargain and sale, mortgage, or other con-
" veyance, &c. shall be good and effectual in law to hold
" such lands, tenements, or hereditaments, against any other
" person or persons, but the grantor or grantors, and their
" heirs only, unless the deed or deeds thereof be acknowl-
" edged and recorded in manner aforesaid."

Here again a bargain and sale is recognized as a valid
mode of conveyance.

But it is said, that this last mentioned clause in the statute
has abolished all the former modes of conveying real estate,
and that no conveyance remains, except that prescribed by
the statute. We have attentively examined the statute,
but have sought in vain to find any thing indicating such an
intention in the legislature. It is a well settled rule, in the
construction of statutes, that affirmative words do not take
away the common law, nor a former statute, unless it be in
cases, where the affirmative words in sense contain a nega-
tive. *Com. Dig. Parliament R.* 23, 26.—*Plowden* 112.—
11 *Coke* 56, *Foster's case.*

The statute, now under consideration, declares what shall
constitute a valid conveyance ; but it contains no negative,
either in its terms, or in sense. On the contrary, it in ex-
press terms recognizes " *bargains and sales, and other convey-*
" *ances,*" and declares, that they shall not be good against
any, but the grantors, and their heirs, unless recorded. Noth-
ing can afford a clearer demonstration, that it was not the
intention of the legislature to abolish the modes of convey-
ance, which had been in common use, than the language
used in this statute. Whoever attentively examines this
subject will find, that the object of this statute was to take
away the necessity of livery of seisin, and to substitute a
deed, executed in a particular manner, and acknowledged
and recorded, in its place. Nothing more than this is believ-
ed to have been intended ; and this purpose the statute has
most conveniently fulfilled. 4 *Mass. Rep.* 64, *Wells vs.
Prince.*

In Massachusetts, the provisions of their statute of 1783,
*cap.* 37, are substantially the same as those of our statute.

Yet, it has never been supposed there, that their statute abolished the ancient modes of conveying real estate. So far from this, the supreme court of that state, in the case of *Wallis vs. Wallis,* (4 *Mass. Rep.* 135,) expressly decided, that a covenant to stand seised was a valid conveyance. And in *Marshall vs. Fisk,* (6 *Mass. Rep.* 31-2,) *Parsons,* C. J., speaking of the statute of uses, says, " conveyances of land, " deriving their effect from the provisions of that statute, " are consequently legal in this state, as well as convey- " ances at common law."

But it is further contended, in this case, that no deed can operate here as a covenant to stand seised, or as a bargain and sale, because the statute of uses was never adopted in this state. If the premises, upon which this argument is founded, are true, the conclusion is without doubt a sound one. These conveyances cannot exist without the statute of uses. But what seems to us to be a decisive answer to this argument is, that our present statute, as well as the ancient provincial act, expressly recognizes a bargain and sale as a mode of conveyance, and thus, by necessary implication, recognizes the adoption of the statute of uses.

Nor is this all. In the case of the *New Parish in Exeter vs. Odiorne et a.* (1 *N. H. Rep.* 237,) Justice *Bell* said, " the " law respecting uses and trusts, as modified by the statute " of the 27 *Hen. VIII.,* was received, and has been in prac- " tice, as the law of this state, from the first organization " of its government."

In the case of *Chamberlain vs. Crane,* (1 *N. H. Rep.* 64,) the adoption of the statute of uses was distinctly recognized by this court.

In the case of *Marshall vs. Fisk,* (6 *Mass. Rep.* 31,) *Parsons,* C. J., says, " the statute of uses being in force in Eng- " land, when our ancestors came here, they brought it with " them, as an existing modification of the common law ; and " it has always been considered a part of our law." And the statute of uses is recognized in many other cases there. 3 *Mass. Rep.* 573.—7 *ditto* 198.—8 *ditto* 442.—7 *ditto* 154.

The statute of uses has also been adopted in New-York. (10 *John.* 456, 505-6.—11 *ditto* 351,) and in Pennsylvania, (1 *Binney* 518.—3 *ditto* 619.—4 *ditto* 1.)

It is clearly the duty of the court to give such construction to every instrument, as will give effect to the intention of the parties, if, by law, it can be done. In this case we are clearly of opinion, that this deed may be construed as a covenant to stand seised, and pass the land without the aid of the statute. The consideration of blood appears upon the face of the deed. 2 *Sand. uses* 90.—*Shep. Touch.* 511, 82, 83.—2 *Vent.* 150, *Lade vs. Baker.*—2 *Wilson* 22, *Doe vs. Simpson.*—2 *ditto* 75, *Roe vs. Tranmer.*—5 *Mass. Rep.* 135. —11 *John.* 351.

The contract of the grantor in this instance, made upon the consideration of blood, is sufficient to raise a use, and that use is executed by the statute of uses. We are, therefore, of opinion, that there be

*Judgment for the demandant.*