## A. PRITCHARD *versus* E. BROWN.

A resulting trust may be shown by parol evidence.

When the consideration money is expressed in a deed of conveyance to be paid by the grantee, evidence that the money belonged to a third person does not go to contradict the deed.

An acknowledgement in a deed of conveyance, that the consideration money has been paid, cannot be contradicted for the purpose of defeating the conveyance, but for any other purpose, it may be contradicted like any other receipt.

The interest of a *cestui que trust* in land, will pass by the extent of an execution upon the land as his estate.

Any person who buys land, while there is a *cestui que trust* in possession, will be presumed to have had notice of the trust.

Where a consideration of money is expressed in a deed of conveyance, the land will pass by way of bargain and sale, although there is only one subscribing witness to the instrument.

THIS was a writ of entry, in which the demandant counted upon his own seizin of a tract of land in New-Ipswich, and upon a disseizin by the tenant.

The cause was tried here upon the general issue, at October term, 1827, when it was agreed, that James Sanderson was once seized in fee of the demanded premises. And it appeared in evidence, that James Sanderson, by deed dated November 5, 1816, conveyed the same premises to Thomas Felt ; and Felt, by deed dated March 31, 1820, conveyed the same to Samuel Lees, the consideration of which conveyance was expressed in the deed to be paid by Lees ; and Lees, by deed dated July 6, 1820, conveyed the land to the demandant.

The tenant then showed, that Thomas Felt, by deed dated November 5, 1816, reconveyed the same land to James Sanderson, in fee and in mortgage ; that in the year 1820, it was agreed between Felt and Sanderson, that the latter should take back the land, and that it should be conveyed to Lees in trust, for the benefit of Sanderson ; and that the deed of the 31st March, 1820, from Felt to Lees, was executed in pursuance of this

agreement. It also appeared, that immediately after the last mentioned deed was executed, Sanderson took possession and occupied and lived upon the land, until the year 1825. The tenant further showed, that on the 17th November, 1823, E. Cook, having an execution against James Sanderson, extended the same upon the demanded premises. And Cook, by deed dated December 5, 1823, for a consideration of money expressed in the deed, conveyed the same to the tenant. But there was the name of only one witness upon this deed.

The court instructed the jury, that James Sanderson, being in the actual occupation of the premises long before, and at the time the deed to the demandant was made, that circumstance was, in law, sufficient notice to the demandant of the trust, and that his purchase was a fraud, that rendered void the deed under which he claimed.

The jury having returned a verdict in favor of the tenant, the demandant moved for a new trial on the foregoing case.

*G. F. Farley*, and *Walker*, for the demandant.

*B. M. Farley*, for the tenant.

The opinion of the court was delivered by RICHARDSON, C. J.

One of the questions, which arises in this case, is, whether as the consideration money in the deed from Felt to Lees is expressed in that instrument to have been paid by Lees, it is competent to permit the tenant in this case, to show by parol evidence that the consideration was in fact paid by James Sanderson? This question is the same with one of the questions decided in the case of *Scoby* v. *Blanchard*, 3 N. H. Rep. 170, but as there has been considerable diversity of opinion heretofore upon this question, we have thought that a reexamination of it might not be without utility, and we shall now state the result of such further examination, as we have been enabled to make, of the question.

Those, who hold that parol evidence is not admissible in such a case, seem to rest their opinion on two grounds; in the first place, they hold that the parol evidence is repugnant to the deed, and on that account inadmissible; and in the next place, that the statute of frauds and perjuries has rendered it inadmissible. Rob. on Frauds, 99—100, Proceed. in Ch. 84, *Kirk* v. *Webb*; ibid, 103, *Newton* v. *Preston*; 1 Vernon, 366, *Gascoyne* v. *Theving*; 2 Atkins, 75, *Cross* v. *Newton*; 12 Mass. Rep. 109, Sanders on Uses, 112—113.

In the case of *Scoby* v. *Blanchard*, to which we have before alluded, the court were of opinion, that the objection to parol evidence, introduced in such a case, to show that the consideration money belonged to a third person, on the ground that it goes to contradict the deed, was not well founded in point of fact. We still retain the same opinion. The fact stated in the deed, is, that the consideration money was paid by the grantee. The parol evidence proving that the money belonged to a third person, does not go to contradict the fact stated in the deed, but to repel a presumption arising from that fact. It is not the case of parol evidence introduced to contradict, vary, or control the settled legal construction of the instrument, like the evidence offered in *Barry* v. *Morse*, 3 N. H. Rep. 134. But the evidence is, in this case, introduced for a very different purpose. It is generally the case, that, when a man pays for land and takes a deed of it in his own name, the money he pays is his own; and in the ordinary course of things it is not likely to be often otherwise. On this ground rests the presumption, that he, by whom the consideration money is stated in a deed to have been paid, was the owner of the money, and the presumption has no other foundation.

It is never stated in the deed to whom the money paid belonged. Nor have the terms, in which the payment is commonly expressed in a deed, ever been construed necessarily to import, that the money paid is the money of

Pritchard
v.
Brown.

the person who is stated in the deed to have paid it. The ownership of the money, is not a part of the contract, to be deduced by construction from the terms of the instrument, as a part of their legal import, but is merely presumed from a fact stated in the deed, which is of such a nature as to afford a reasonable ground from which to infer the ownership. It therefore seems to us to be exceedingly clear, that parol evidence, introduced in cases of this kind, to show to whom the money belonged, is not repugnant to the terms of the deed, in such sense as to render it inadmissible on that ground.

But there is another answer to this objection to the evidence. Even if the evidence were repugnant to that clause in the deed, which states the payment, it would still be competent testimony. It was not introduced to defeat the operation of the conveyance, and it must now be considered as settled, in this state, that a receipt in a deed may, for any other purpose, be contradicted like any other receipt. *Morse* v. *Shattuck*.

For these reasons, it seems to us that the objection to the testimony introduced to show who was the owner of the consideration money, on the ground that it went to contradict the deed, is without any legal foundation, and cannot be sustained.

But it has been supposed, that such testimony has been rendered inadmissible by the statute of frauds and perjuries.

In order to understand this objection to the testimony, it is necessary to advert to the clause in the statute which is supposed to have that effect. It is in the statute of February 10, 1791, entitled "an act declaring the mode of conveyance by deed," sec. 2, and is as follows ;—" that all grants and assignments, and all declarations and creations of trusts or confidences of any lands, tenements, or hereditaments, shall be manifested and proved by some writing, signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else

they shall be utterly void and of none effect. Provided always, that where any conveyance shall be made of any lands, tenements, or hereditaments, by which a trust or confidence shall arise, or result by the implication or construction of law to be transferred or extinguished by an act or operation of law, then, and in every such case, such trust or confidence shall be of the like force and effect as the same would have been if this act had not been made."

It may be here remarked, that these provisions are the same as those contained in the statutes which have been enacted upon the subject in England, Massachusetts, and New York. Roberts on Frauds, 91 ; 3 Shep. Touch. 114 and 198.

Now the obvious meaning of this clause in the statute, seems to us to be, that no grant, assignment, declaration, or creation of a trust by any person shall be proved without writing. Whenever the trust is founded upon the agreement or declaration of a party, a writing is essential. But when a man purchases land and takes a conveyance in the name of a third person, the ownership of the money is neither a grant, assignment, declaration, or creation of a trust by any person. The trust that results from the ownership of the money, is a mere creation of the law, and not founded on any agreement or declaration whatever.

Independently of the proviso, therefore, the statute could hardly be construed to render it necessary, that the ownership of the purchase money should, in such a case, be proved by some writing in order to raise a resulting trust.

But whatever doubts there might have been without the proviso, it is believed to be now settled every where, except in Massachusetts, that the ownership of the purchase money paid for land conveyed, may be proved by parol evidence in order to raise a resulting trust. Sugden's Law of Ven. 416–417 ; 10 Vesey, Jr. 511, *Lench* v.

*Lench* ; 2 Fonbl. 118, note *c* ; 5 Johns. Ch. Rep. 1, *Steere* v. *Steere* ; 2 ditto, 405, *Botsford* v. *Burr* ; 15 Vesey, 50, *Finch* v. *Finch* ; 1 Johns. Ch. Rep. 582.

Another question, which this case presents for our decision, is, whether the interest of a *cestui que trust* in land can be transferred in satisfaction of a debt, by the extent of an execution upon the land ?

The statute of February 15, 1791, entitled " an act subjecting lands and tenements to the payment of debts," &c. sec. 1, enacts, " that all lands and tenements belonging to any person in his own proper right in fee, shall stand charged with the payment of all just debts owing by such person, as well as his personal estate, and shall be liable to be taken in execution for satisfaction of the same." 1 N. H. Laws, 181. This statute does not, in express terms, make any estate in lands liable for the payment of debts, except an estate in fee. But it seems to have been universally understood in this state, for a period running back beyond the memory of any who now belong to the profession of the law, that all real estate of every description was subject to be taken by an execution to satisfy a debt. Thus estates for life, and remainders and reversions, and even the right in equity, which a mortgagor has to redeem land mortgaged, have always been considered as liable to an extent upon execution, to satisfy the debts of those to whom they belonged. The statute of July 3, 1822, entitled " an act making provision for the sale on execution of all rights in equity of redeeming real estate mortgaged," has been understood to operate only to change the mode of applying the right of redemption to the satisfaction of the debt from an extent, to a sale, upon the execution. No doubt could ever, at any time, have been expressed in any court, that all these interests in lands were liable to be taken by execution, otherwise, further provisions on the subject would, without question, have been made by the legislature.

Indeed, while the statute book has seemed to show, that nothing less than an estate in fee simple was liable to an extent, yet, in practice, almost every species of interest which a man can have in land, have been made so liable.

We have endeavored to ascertain how this has happened, and the following is the best explanation which has occurred.

The statute of February 15, 1791, which we have before mentioned, was copied verbatim from the Provincial act of 4 George I, cap. LXVI, sec. 1, which was passed in 1718. Prov. Laws, 90.

The English statute of 5 Geo. 2, entitled "An act for the more easy recovery of debts in his majesty's plantations and colonies in America, sec. 3, enacted, " that from and after the 29th September, 1732, the houses, lands, negroes and other hereditaments and real estates situate, or being within any of the said plantations belonging to any person indebted, shall be liable to, and chargeable with, all just debts, duties and demands of what nature or kind soever, owing by any such person to his majesty or any of his subjects ; and shall and may be assets for the satisfaction thereof, in like manner as real estates are by the law of England, liable to the satisfaction of debts due by bond, or other specialty." Prov. Laws, 235.

This statute was printed here among the laws of the Province, and as it rendered every species of real estate liable to pay the debts of the owner, it is probable that previously to the revolution, it was the practice under this statute, to take by execution whatever interest a debtor had in land. The law remained the same after the revolution. And it does not appear, that the revision of the said Provincial act of the 4 Geo. I, cap. 66, in 1791, was ever supposed to change any principle of law on this subject in the least. The Province act was merely copied without alteration ; and the English statute of the 5 Geo. II, some of the provisions of which should

have been copied into the act of 1791, has remained in force from necessity, preserved by that clause in the constitution which declares, that "all the laws which have heretofore been adopted, used, and approved in the Province, Colony or State, of New Hampshire, and usually practised upon in the courts of law, shall remain and be in full force until altered or repealed by the legislature," and is still the law of the land here at this day.

It must be admitted, that, if the practice of extending executions upon lands mortgaged as the estate of the mortgagor, was originally founded upon the said statute of the 5 George II, it must have been by a very liberal interpretation of its terms. If it were now a new question, it would certainly deserve consideration, whether the term "real estate," is broad enough to embrace a mortgagor's right in equity to redeem the land. 2 Pick. 508, *Russell* v. *Lewis*.

But this practice is of too long standing, and is the foundation of too many titles to be now questioned. A decision against the practice at this time would be productive of great mischief and inconvenience ; the law must, therefore, be considered as settled in favor of the usage.

And we are of opinion, that the interest of a *cestui que trust* must stand on the same ground as that of a mortgagor, and while the right of a mortgagor shall be held to pass by an extent upon the land as his property, the interest of a *cestui que trust* must be held to pass in the same way.

It is also a question, in this case, whether, James Sanderson having the possession of the land, and actually living upon it at the time the demandant purchased, this must be deemed, in law, sufficient notice of the trust to this demandant ?

What shall be deemed constructive notice in cases of this kind, has been much discussed in courts, and we consider it as perfectly well settled, that open exclusive

possession is sufficient notice to all the world of any claim which he, who is so in possession, has upon the land. It is not to be supposed that any man, who wishes to purchase land honestly, will buy it without knowing what are the claims of a person who is in the open possession of it.

It is reasonable, if men will buy in such cases without enquiry, that they should be presumed to have known every thing, which they might have learned upon due enquiry. 3 Mass. Rep. 579 ; 2 ditto. 508 ; 6 ditto. 487 ; 4 ditto. 637 ; 14 ditto. 300 ; 16 ditto. 406 ; 1 Pick. 164 ; 3 ditto. 149 ; 5 B. & A. 142 ; Sugden, 498 ; 19 Vesey, 456 ; 10 Johns. 457 ; Newland, 509 ; 8 Johns. 137 ; 1 Johns. Cases, 53 ; 2 Vesey, Jr. 437 ; 2 Fonbl. 151, note ; 1 Burr. 475 ; 10 Mass. Rep. 60 ; 1 Meri. 282, *Allen* v. *Anthony* ; 2 Vesey, Jr. 437, *Taylor* v. *Stibbert* ; 16 Vesey, Jr. 250, *Daniels* v. *Davison.*

There is still one further question in this case. The deed, under which the tenant claims the land has only one subscribing witness, and the question is, whether any thing can pass by virtue of such an instrument ?

It may be conceded, that the instrument cannot operate under our statute to pass any estate. But there is a consideration of money expressed in the deed, and this is sufficient to raise a use which is executed by the statue of uses. 2 Saunders on uses, 50—67.

The instrument may therefore operate as a bargain and sale, and thus pass the land without the aid of our statute. *French* v. *French*, 3 N. H. Rep. 234.

We are therefore of opinion, that, as the demandant bought the land with notice of the trust, he cannot, for the reasons stated in the case of *Scoby* v. *Blanchard*, 3 N. H. Rep. 170, maintain this suit, and that there must be

*Judgment on the verdict.*