## HEBRON *vs.* CENTRE-HARBOR.

In the year 1823, the owner of land in Centre-Harbor, of the value of $350.00, which was mortgaged for the sum of $160·00, conveyed it in fee ; the grantee, at the same time, executing a writing, not under seal, by which he agreed to re-convey the land, upon the payment of $160.00, in four years, or to pay all costs and damages.

Upon the question whether the grantor owned real estate of the value of $150.00, or personal estate of the value of $250.00, so as to give him a settlement, it was *held*,

That a right in equity to redeem land mortgaged, was real estate within the meaning of the statute of the 16th of December, 1828 :

That the transaction was not a mortgage at common law, because the agreement was not under seal.

As the grantee had an election to re-convey, or pay costs and damages, whether the court could decree a re-conveyance—*quere ?*

That the grantor's interest was only a *chose in action*, which could only be enforced by a suit for the recovery of damages :

That, even if such chose in action could be considered as personal estate within the meaning of the statute, it was not of the value of $250.00, and that he could not, on any ground, acquire a settlement in Centre-Harbor.

Whether a contract to convey land of which a specific performance might be decreed in chancery, be real estate within the meaning of the statute—*quere ?*

ASSUMPSIT, for the support of A. L. Fox, a pauper, who was alleged to have his settlement in the town of Centre-Harbor.

The pauper derived his settlement from John Fox, who moved into Centre-Harbor in the year 1821, and purchased a tract of land of one Benjamin Brown. The land, at the time of the purchase, was incumbered by a mortgage to one John Towle, to secure the payment of the sum of $160.00. The note, to secure which the land was mortgaged, was payable in one year from the second day of June, 1821, and was paid about the time it became due. On the 17th day of July, 1823, Fox conveyed the land to one Joseph Sturtevant. The deed was never recorded. On the same day, Sturtevant executed and delivered to Fox a writing, not under seal, setting forth that Fox had conveyed the land to him, and stating that the condition of the deed was, that if Fox should pay to Sturtevant, his heirs, &c., the sum of $160.00, at any time within four years from the 1st day of April, 1823, then Sturtevant, his heirs, &c., were to re-convey the land to Fox, his heirs, &c., or to pay all costs and damages.

In consideration of this deed, Sturtevant was to make certain advances of money, and pay certain debts due from Fox; but it did not appear that he advanced more than $70.

It appeared in evidence, that towards the close of the four years mentioned in the writing, the deed was given up and cancelled.

The jury found that Sturtevant held the deed two years or more, and that the land, clear of incumbrances, was worth $350.00.

On the 1st day of April, 1829, Fox conveyed the land to his son, Jonathan Fox, in fee. From the time of the purchase, in 1821, until the 1st day of April, 1829, he paid all the taxes upon the land, excepting the tax for the year 1828, amounting to the sum of $5.18, of which the sum of $4.93 was abated by the town.

It was contended by the defendant, that the land was not of sufficient value to give John Fox a settlement in the town, and that the taxes thereon had not been paid by him for four successive years. Also, that while the mortgage

existed, Fox was not, within the meaning of the statute, the owner of real estate, so as to give him a settlement; and if he were, the equity of redemption owned by him was not of sufficient value for that purpose. It was also contended, that while Sturtevant held the deed, no title of any description remained in Fox.

A verdict was taken for the plaintiff, which the defendant moved to set aside, on the ground that the facts, as above set forth, do not show a legal settlement of the pauper in the town of Centre-Harbor; and it was agreed, that if, in the opinion of the court, the verdict should be set aside, there should be judgment for the defendant.

*Quincy,* for the plaintiff.

*Joseph Bell,* for the defendant.

GILCHRIST, J. The fourth clause of the first section of the act of the 16th of December, 1829, *N. H. Laws* 300, (*Ed. of* 1830,) provides, that "any person, of the age of twenty-one years, having real estate of the value of two hundred and fifty dollars, or personal estate of the value of one hundred and fifty dollars, in the town where he dwells and has his home, and for the term of four years in succession paying all taxes assessed on his poll and estate aforesaid, shall thereby gain a settlement in such town."

On the question whether a pauper had gained a settlement by being the owner of real estate, it has often been held to be sufficient, for the purposes of settlement, if he had an equitable title only, and not a legal title. *Whitestown* vs. *Constable,* 14 *Johns.* 469, *and cases there referred to.* And the same principle is recognized in *Poplin* vs. *Hawke,* 8 *N. H. Rep.* 124. And a right in equity to redeem land has been held to be real estate within the meaning of the statute. *New-London* vs. *Sutton,* 2 *N. H. Rep.* 401. So the estate of a *cestui que trust* is real estate within the statute, for the purposes of settlement. *Orleans* vs. *Chatham,* 2 *Pick.* 29.

If, therefore, the title may be of either of the descriptions above mentioned, it may perhaps be an equitable title of any character. If, having an equitable title, that title could be made perfect in him by a decree for specific performance, it may be he would have such a title as is contemplated by the statute. But this point need not now be settled.

It is contended that the conveyance by Fox, and the agreement in writing made by Sturtevant on the same day, made the whole transaction a mortgage, and left an equity of redemption in Fox.

This agreement was to re-convey, on the payment of the sum of $160.00, or to pay all costs and damages.

The court, at the time of the execution of these instruments, possessed some chancery powers in questions of mortgage; but they were derived entirely from statute, and were of very limited extent.

At common law, a mortgage is defined to be a deed conveying lands, with a condition that it should be void upon payment of money, or the doing of some other act. This condition may be included in the deed of conveyance, or it may be by a separate deed, executed, or, at least taking effect, at the same time, so as to be a part of one and the same transaction. It must be by deed, and cannot be by parol, or by instrument in writing not under seal. *Lund* vs. *Lund*, 1 *N. H. Rep.* 39.

It is clear, therefore, that the whole transaction did not constitute a mortgage at common law; and it is unnecessary to inquire whether it were an equitable mortgage—as, if it were, the court could not enforce it as such, on account of their not being invested with chancery powers.

There is also another ground upon which it may be held that here was no mortgage; and that is, because the grantee had an election to re-convey the land, or to pay all costs and damages. The fee of the land was absolute in the grantee, if he elected so to consider it. This point is settled in *Fuller & a.* vs. *Pratt & a.*, 1 *Fairf.* 197.

Even if the contract could have been enforced in equity by a decree for specific performance, the court had no chancery powers that would reach this case. These powers were not given the court until the year 1832, and this transaction happened some years before that time. But even if the power to decree a specific performance had existed, it is very questionable whether this were a contract which equity would enforce by a decree for a re-conveyance.

In the case of *Fuller & a.* vs. *Pratt & a.* the grantees, by an instrument under seal, agreed to pay the grantor any balance that might be found due on settlement, or re-convey the land. It is said by Mellen, C. J., that "no bill in equity could have been maintained against the grantees, because they were not bound to re-convey the land, but might discharge themselves from their contract by payment in money of the balance that should be due ; and, for the same reason, such contract created no right which could have been attached and sold for the payment of the grantee's debts."

Fox, therefore, had no property, which, at that time, could be considered as real estate, but only a chose in action, which he might enforce by a suit for the recovery of damages. If this could be considered personal estate, to the value of the difference between the amount of the incumbrance and the value of the land as found by the jury ; that is, if a right of action against Sturtevant were worth the sum which the party could legally recover, still Fox did not own such property a sufficient length of time to fulfil the requisitions of the statute, nor is there any evidence from which it can be inferred that the property was worth the sum of two hundred and fifty dollars, after the conveyance to Sturtevant. Fox held no real estate, and the personal estate does not appear ever to have been worth more than the sum of $190.00, the difference between the amount of the incumbrance and the value of the land. The verdict, therefore, must be set aside, and there must be

*Judgment for the defendant.*