## PEMBROKE *v.* ALLENSTOWN.

Where an estate is purchased in the name of one person, and the consideration money is actually paid, at the time, by another, there is a resulting trust in favor of him who paid the consideration, by implication of law.

The trust results from the ownership and payment of the money — is a creation of the law, and is not founded upon any agreement or declaration whatever.

Where an estate is purchased in the name of the wife, and the consideration is paid by the husband, a trust results in favor of the husband.

The interest of the *cestui que trust* in such estate, is real estate; within the meaning of the provisions of ch. 3, § 4, 1 N. H. Laws, 301, establishing the fourth mode of acquiring the settlement of paupers.

So is the right in equity which a mortgagor has to redeem real estate mortgaged.

So also is the right in equity of the *cestui que trust* to redeem the trust estate mortgaged.

ASSUMPSIT, for the support of Timothy Ayer, a pauper, supported by Pembroke, but alleged to have a settlement in Allens-

town, and to be by law chargeable to that town.    It is admitted that the settlement of the pauper was formerly in Allenstown, and that town is by law chargeable with his support, unless he gained a new settlement in Pembroke, under the following circumstances.

In 1838, the said Timothy Ayer, now a pauper, as aforesaid, sold a farm in Allenstown, owned by him in his own right, for $1,000.    With $700, part of the proceeds, he shortly after purchased a farm in Pembroke, to which he removed.    The deed of this farm in Pembroke, was, by his direction, made to his wife, Lucy Ayer.   He and his wife resided on the farm till her death, five or six years after ; and during that time it was taxed to the pauper, and he paid all the taxes for more than four years. About three years after the purchase of the farm, Ayer and his wife executed a mortgage of it to secure the payment of a note of the same date, signed by them, for $315, given for money then borrowed by Ayer.   Upon the death of the wife, the equity of redemption was sold, and the proceeds, with the assent of the heirs of the wife, (said Ayer and wife not having any children,) who executed the conveyance of the equity, were applied to the payment of some debts of said Ayer.

It was admitted, that the value of the estate, during four years in the lifetime of the wife, over the mortgage, was over $150, and that all taxes on it, during that time, were duly paid by said Ayer ; and further, that any interest in the estate in said Ayer, by virtue of his relation as husband to said Lucy, was not of the value of $150.

It was agreed, that if upon the foregoing facts it should be determined that the pauper had such an ownership of said real estate, as is required by law to give a settlement in Pembroke, judgment should be rendered for the defendant, for costs ; otherwise for the plaintiff, for the time claimed, at the rate of ninety cents per week, with interest from the date of the writ, and costs.

*Pierce & Minot,* for the plaintiffs.

*Fowler,* for the defendants.

Pembroke *v.* Allenstown.

Woods, J.   It is conceded, that Ayer the pauper, in 1838, had his settlement in Allenstown.

It is claimed, however, on the part of Allenstown, that Ayer has, since that time, gained a settlement in Pembroke, according to the 4th mode of acquiring settlements provided by 1 N. H. Laws, ch. 3, § 4, page 301.   By that statute it is provided, that " any person of the age of twenty-one years, *having real estate* of the value of one hundred and fifty dollars, or personal estate of the value of two hundred and fifty dollars, in the town in which he dwells and has his home, and for the term of four years in succession, paying all taxes duly assessed on his poll and estate aforesaid, shall thereby gain a settlement in such town."

The only question made in this case is, whether Ayer the pauper had such an ownership of real estate in Pembroke as is required by the provisions of the section of the statute above cited, to give a settlement in this State.

It is conceded, that if the purchase of the farm in Pembroke, under the circumstances of it, is to be regarded as investing Lucy Ayer, the wife of the pauper, with the entire title, both legal and equitable, to the estate in the land so purchased, excepting the interest which would result to the husband in virtue of the coverture existing between them, the pauper was not possessed of an estate of sufficient value to confer a settlement. The freehold estate, to continue during their joint lives, was not of the value of $150.   But we conceive that such was not the state of the title acquired by the pauper in virtue of the purchase.

The facts reported furnish the case of a resulting trust in favor of the husband, at the time of the purchase, giving him the entire beneficial interest in the farm.   The money with which the farm in Pembroke was purchased and paid for, was the money of the pauper at the time, and the deed was made to his wife, by his direction.

This is the precise example of a resulting trust, as laid down in the books.   Mr. Chancellor *Kent* says, " when an estate is purchased in the name of A., and the consideration money is actu-

9*

ally paid at the time by B., there is a resulting trust in favor of B., provided the payment of the money be clearly proved. The *payment at the time* is indispensable to the creation of the trust."

Lord *Hardwicke* states, as one of the cases of a resulting trust arising by operation of law, that of an estate purchased by one person the consideration coming from another. *Lloyd* v. *Spillet*, 2 Atk. Rep. 150.

Mr. Chief Justice *Thompson* says, "it is a well-settled rule of law, that if A. buys land and takes a conveyance in the name of B., it is a resulting trust for him who paid the purchase-money, by implication of law, and therefore not within the statute of frauds." *Jackson* v. *Matsdorf*, 11 Johns. Rep. 90.

Mr Justice *Story* states the same to be the well-settled principle in equity; that it was so decided soon after the passing of the statute of frauds, in 29 Charles II., in an anonymous case in 2 Ventris, 361; and that the doctrine of that case has never been departed from. *Powell* v. *Monson*, 3 Mason, 347.

The same doctrine is laid down in *Gardiner Bank* v. *Wheaton*, 8 Greenl. Rep. 373; Sugden's Law of Vendors, 414, 415; *Doe* v. *Statham*, 7 Dowl. & Ry. 114; *Jackson* v. *Moore*, 6 Cowen, 726; *Boyd* v. *McLean*, 1 Johns. Ch. Rep. 582; *Jackson* v. *Morse*, 16 Johns. Rep. 197; *Botsford* v. *Burr*, 2 Johns. Ch. Rep. 405; 2 Fonbl. Eq. 16, note; *Gennan* v. *Gabbald*, 3 Binney, 302; *Gregory* v. *Setter*, 1 Dall. 193. So also, the same principle has been recognized in this State in several cases; *Scoby* v. *Blanchard*, 3 N. H. Rep. 170; *Pritchard* v. *Brown*, 4 Ibid. 397; *Page* v. *Page*, 8 Ibid. 187.

And it is said, that if only a part of the purchase-money be paid by the third party, there will be a resulting trust in his favor *pro tanto;* and that the doctrine applies to a joint as well as to an individual purchase. 4 Kent, Comm. 301; *Powell* v. *Monson*, 3 Mason, 364; *Wray* v. *Steele*, 2 Ves. & Beames, 389.

The whole foundation of the trust is the ownership and payment of the money. Mr. Chancellor *Kent*, in *Botsford* v. *Burr*, after giving an example of a resulting trust, where the conveyance was taken in the name of B., says, " the trust results

to A. *because he paid the money.*" So in *Gardiner Bank* v. *Wheaton,* it is said, that, " the ground of the doctrine is, that he who pays the money, is to be considered the owner in equity." In *Pritchard* v. *Brown,* 4 N. H. Rep. 401, it is said, that " the trust results from the ownership of the money; is a mere crea-tion of the law, and not founded on any agreement or declara-tion whatever."

And as well may a resulting trust arise in favor of the hus-band, in a case where the conveyance has been taken in the name of the wife, and where the purchase-money has been paid by the husband, as where the conveyance is taken in the name of some other third person. *Whitestown* v. *Constable,* 14 Johns. Rep. 469. We can discover no principle of law that is opposed to this conclusion. No act or agreement on her part is required, in order to create the trust, which is inconsistent with the rules of law. The trust arises, in fact, upon the mere ownership and payment of the money, and not upon a contract entered into on the part of the trustee. *Pritchard* v. *Brown,* 4 N. H. Rep. 401.

It is clear then, upon the authorities, that, upon the convey-ance to his wife, the estate in question became vested in her, only in trust for the pauper, and for his sole benefit.

The estate remained in that condition unchanged, about the period of three years after the purchase, when the pauper and his wife executed a mortgage of it, to secure a note signed by them, given for money borrowed by the husband; but the equity of redemption, as the case finds, was still of greater value than $150.

And the question is, whether the pauper is to be regarded as having such an interest in real estate, or, in the language of the act, as " having real estate," both before and after the execu-tion of the mortgage, such as would enable him to gain a settle-ment, upon a compliance with the other requirements of the statute.

It is apprehended, that it has long been the well-settled doc-trine in England, that an equitable title in real estate will give a settlement at common law, and that an indefeasible, equitable

title is sufficient to bring a *purchase, implying title,* within the provisions of the act requiring such purchase, in order to give a settlement.

In the case of *The King* v. *The Inhabitants of Offchurch,* 3 Term Rep. 314, the facts were these. The husband and wife occupied a house under this title: It was vested by a settlement in trustees, for the separate use of the wife, with a clause that the wife's receipts should be a discharge of the rents, and that the rents should not be subject to the husband's debts. It was held, that this was such an estate or title in the husband as to give him a settlement.

In that case Lord *Kenyon* states, that, where an estate is vested in the wife, the husband gains a settlement; and that, even where such estate is an equitable one, as where the legal estate is vested in trustees, and the equitable estate in the wife.

And he further states, that if the deed, in that case, was given to the wife to protect the property from the creditors of the husband, or for any other purpose, and the *husband paid the money,* then she was his trustee, and he had the whole beneficial interest.

In *The King* v. *The Inhabitants of St. Michaels,* Douglas, 630, the same rule was laid down by Lord *Mansfield.*

These were cases, however, at common law, and decide nothing more than that, at common law, a settlement may be gained by the husband, when the wife is secured of an estate in lands, *either legal or equitable,* or *holds it in trust for her husband.*

In the case of *The King* v. *The Parish of Edington,* 1 East, 288, the question was, whether the husband had such an interest in the estate of his wife as gave him a settlement. The title was thus: The wife purchased, before coverture, a cottage lease, for ninety-nine years, determinable originally on three lives, and the cottage was, during the life of the husband, conveyed in trust, to be sold or mortgaged, to raise $10, and after payment of the same to be reassigned. Upon the death of the first husband, the pauper married the widow; and, by

residing forty days in the cottage, of which the wife had retained the possession, was held to have gained a settlement. Lord *Kenyon* declared the conveyance in that case "equivalent to a mortgage, and no more." *Lawrence*, J., expressed his opinion by quoting the language of Lord *Mansfield*, in the case of *The King* v. *The Inhabitants of St. Michaels :* "If the estate on which the pauper resides be substantially his property, that is sufficient, whatever forms of conveyance there may be ; and, therefore, he says, that a mortgagor in possession gains settlement, because the mortgagee, notwithstanding the form, has but a chattel, and the mortgage is only a security."

In the case of *The King* v. *Holmeast Waverquarter*, 16 East, 127, the father of the pauper died, leaving a will by which he devised a cottage and land to a trustee, in trust to let the same, during the natural life of his daughter the pauper, and to pay her the rents, after deducting the expenses during her life ; and the pauper continued to reside on the premises more than forty days after her father's death. Lord *Ellenborough*, C. J. said, "Whether the estate here was *legal* or *equitable*, it was still the pauper's own, and she could not be removed from it by an order of justices."

*Whitestown* v. *Constable*, 14 Johns. Rep. 469, was a case in which arose the question of the legal settlement of a pauper, who in June, 1815, purchased a house and lot in Whitestown, and at the time of the purchase paid $50, and afterwards paid $20, and the additional sum of $28, as interest, upon the purchase. A deed was given to the pauper's wife. It was decided in that case, in accordance with a suggestion made in the case of *Schaghticoke* v. *Brunswick*, 14 Johns. Rep. 199, that although the statute of New York made use of the term *purchase* only, this necessarily implied a title in the pauper, to give him a settlement ; and further, that a conveyance to the pauper himself, is not indispensable ; but that an *indefeasible equitable interest* is sufficient to bring the purchase within the provisions of the act ; and it was there suggested, that a similar doctrine has obtained in England, under a statute with similar provisions. *Van Ness*, J., in pronouncing the judgment of the court, says : "If the

property was purchased with the wife's money, the husband was seized *jure uxoris*, she having a deed for it, and never having reconveyed, for aught that appears. If the payment was made by the husband, a trust results to him ; and that was a sufficient title to give him a settlement in Whitestown." And it is well settled, in this State, that the interest of a *cestui que trust* in land, can be transferred in satisfaction of a debt, by an extent of an execution upon the land. *Pritchard* v. *Brown*, 4 N. H. Rep. 397. So, also, the right in equity which a mortgagor has to redeem land mortgaged, has always been considered as liable to an extent upon execution. And the statute of July 3d, 1822, entitled, " an act making provision for the sale, on execution, of all rights in equity of redeeming real estate, mortgaged," is regarded as operating only to change the mode of applying the right of redemption to the satisfaction of the debts, from that of an extent to a sale at public auction, upon the execution.

And in *Pritchard* v. *Brown*, before cited, it is said, that " the interest of a *cestui que trust* must stand on the same ground as that of a mortgagor, and while the right of a mortgagor shall be held to pass by extent upon the land as his property, the interest of a *cestui que trust* must be held to pass in the same way." And it is clear, that no interest will pass by an extent, under our laws, but an interest in real estate.

In *Poplin* v. *Hawke*, 8 N. H. Rep. 128, it is said, that it is sufficient for the purposes of a settlement, that the pauper has the equitable title only, and not the legal title.

In *Orleans* v. *Chatham*, 2 Pick. 29, the question was, whether the estate of a *cestui que trust* is such an estate as the statute of that State requires, to enable a person to gain a settlement, according to the 4th mode described in it, by *owning an estate of freehold* in the town, &c.

*Parker*, C. J., says, in that case, that " the statute does not say whether it shall be the legal estate or not ; but only that it shall be an estate of freehold or inheritance, and these terms will include a trust estate of freehold or inheritance."

A mortgagor of real estate, as against all persons except the mortgagee, is regarded as the owner of the estate mortgaged ;

Pembroke *v.* Allenstown.

and may maintain a real action to recover the possession. *Ellison* v. *Daniels*, 11 N. H. Rep. 274.

So it is said in *New London* v. *Sutton*, 2 N. H. Rep. 401, that it has always been considered that a right in equity to redeem land, was real estate, within the meaning of the statute under consideration. See also *Groton* v. *Roxbury*, 6 Mass. Rep. 50, and *Conway* v. *Deerfield*, 11 Ibid. 327.

The doctrine, that the estate of a *cestui que trust* is real estate, within the statute, for the purposes of settlement, is stated in the opinion of the court in the case of *Hebron* v. *Centre Harbor*, 11 N. H. Rep. 571, and the case of *Orleans* v. *Chatham*, in 2 Pick. is referred to in support of it. And we see no reason to doubt the correctness of that doctrine. The language of the act, upon a fair and obvious construction of it, would seem to require no more than the ownership of real estate, in the pauper, without regard to the character of the estate, whether legal or equitable. The language of it is, " any person of the age of twenty-one years, *having real estate* of the value of one hundred and fifty dollars," &c. " shall thereby gain a settlement."

The statute, then, by its terms, requires that the person should have real estate — that is, should have an interest or ownership in real estate — and that is all. And as we have already seen, by numerous authorities, the interest of a *cestui que trust* is an interest in real estate ; and the same, in this State, may be transferred by an extent of an execution upon the land, in satisfaction of a debt. So, also, a mortgagor's interest has always been regarded as an interest in real estate, and liable, as such, to an extent upon execution, in satisfaction of the debt.

If, therefore, as we conceive the law to be, the interest of a *cestui que trust* be sufficient to give a settlement, and if an equity of redemption be real estate, within the meaning of the provision of the section already cited, it would seem to follow, that the estate possessed by the pauper, in the present case, was sufficient to enable him to gain a settlement. During the first three years, the pauper was the owner of an unincumbered trust estate, of greater value than $150, and during the re-

mainder of the life of his wife, (a period of two or three years,) was the owner of the equity of redemption of a trust estate, to which he was then entitled, and in which, as mortgagor, he was alone beneficially interested, and of greater value than $150.

He was then the owner of an equity of redemption of real estate, and must be regarded, therefore, as " having real estate " within the meaning of the act. Upon the whole, we see no ground to doubt, that the pauper had such an ownership of the real estate mentioned in this case, as gave him a settlement in Pembroke ; and, therefore, we are of the opinion, that the defendants, according to the provisions of the case, are entitled to judgment for their costs.

*Judgment for the defendants.*