THE NEW PARISH IN EXETER

*versus*

THOMAS ODIORNE ET AL.

If the demandant in a real action declare upon a seizin within twenty years, proof of a seizin within that period is essentially necessary to the maintenance of his action.

If a devise of real estate be made to one for the benefit of others, and the devisee has a discretion as to the persons or objects which are to receive the benefit of the devise, such devise is a trust, and not a use.

A devise or grant to one for the benefit of another, not executed by the statute of uses, vests the seizin and entire legal estate in the trustee.

THIS is a real action, brought to recover the possession of a tract of land in *Exeter.*

The demandants count on the seizin of one *Joseph Brown*, late parson of the parish, in right of the parish, taking the profits, &c. within twenty years next preceding the first day of January, A. D., 1816, the time of the commencement of their suit—the dismission of *Brown* from his office as pastor is alleged, and the entry, &c. of the tenants since the vacancy occasioned by his dismission.

Plea, that the tenants did not disseize, &c.

It appeared in evidence at the trial that the town of *Exeter* constituted only one parish and society for religious purposes till about 1743, when *Nicholas Gilman*, jr. with a number of other persons, separated and formed a new church and religious society, and erected a meeting-house. On the 28th of January, 1745, *Nicholas Gilman*, jr. made his will, which was duly approved in 1746, by which he devised to *Peter Gilman, Samuel Gilman*, and *Daniel Thing*, members of said church and society, the lands in question, " to be improved by them for and the towards sup-" port of a minister or ministers which shall or may hereafter " be settled in the ministry in the church of Christ which usu-" ally meet or assemble in the new meeting-house ; or for " any other pious use, according to their discretion, or to the " discretion of any two of them, so long as they or any two " of them, shall live and agree to improve the said premises " for the uses aforesaid.

" In case of refusal, incapacity or decease of any two of " them, my will is that the said premises shall be improved " for the uses aforesaid by the deacons of said church, when " there are any such ; and if said church shall be without dea-" cons, or in case of said deacons' refusal or incapacity to im-" prove said premises, my will is, that said premises shall be " improved by such persons as said church shall make choice " of, from time to time, to improve the same.   My will is that " the yearly rent or income of said premises shall be applied " to the uses aforesaid, and no other forever hereafter."   In 1748, this church and society settled a Mr. *Rogers* as their pastor, who sustained that office till his death in 1785.   Mr. *Rogers*, during the whole time in which he sustained the pastoral office in this society, occupied and took the profits of the premises in question.—In September, 1755, the legislature incorporated this society by the name of the *New Parish in Exeter*.   From this time till 1785, the parish repaired the buildings and fences on the premises, and designated it on the records by the name of the *Parsonage.*

The New Parish in Exeter
*vs.*
Odiorne & al.

*Daniel Thing*, and *Samuel Gilman*, two of the trustees in the will of *Nicholas Gilman*, jr. died previous to the 29th of March, 1785, at which time the parish voted to petition the legislature to pass an act to confirm the Parsonage given by *Nicholas Gilman*, jr. to the New Parish. In Feb. 7th, 1786, the legislature passed an act, on this application, in which they recite the devise of *Nicholas Gilman*, jr. in the words of the will, state the death of two of the trustees, and allege that it was doubtful whether any other person mentioned in the will could legally improve the premises to the use intended by the donor, and enact that *Peter Gilman, Josiah Gilman* and *Thomas Odiorne* be appointed trustees, with power to fill vacancies in their own body, "and that they and " their successors shall forever hereafter use and improve " the land and buildings aforesaid, for the sole purposes men- " tioned in said will." The trustees named in said act met in March, 1786, accepted the trust, and appointed *Odiorne*, one of the defendants, their clerk; and on the first of April following let the premises for two years, and at the expiration of that term let them again for one year. On the 7th of January, 1789, these trustees, stiling themselves trustees of the donation made to the church at the new meeting-house for the support of the ministry, there or for pious purposes, by *Nicholas Gilman*, jr., leased the premises to *Lakeman* for twenty-five years, to commence the 15th of April, 1789, at a rent of forty dollars per annum, with a reservation that if the premises at any time before the expiration of the term should be wanted for a minister of the new parish, the lessee should give up the possession, &c.

The daughters of Mr. *John Rogers*, late minister of the parish, were permitted by the trustees to occupy a part of the dwelling house on the premises, and an abatement of ten dollars per annum of the rent made to *Lakeman* on that account.

In September, 1792, the trustees voted that thirty dollars per annum of the rent of the premises should be paid towards

the Rev. Mr. *Brown's* salary during his ministry, which was paid accordingly.

Mr. *Brown* was settled as minister of the new parish in November, 1792, and dismissed from his office in November, 1797.

After the expiration of the lease to *Lakeman*, the defendants let the premises to other tenants, and by them were in possession at the time of the commencement of this suit. There was no evidence of any other appropriation of any part of the income of the property by the trustees excepting as before stated. Upon this evidence a verdict was taken for the demandants, by agreement, ubject to be set aside and a verdict entered for the tenants, if the court should be of opinion that upon the facts proved the demandants were not entitled to recover.

BELL, J. The demandants in this action declare upon a seizin within twenty years before the commencement of their suit. This is a material allegation, and it is essentially necessary for them to prove a seizin within that period to entitle them to recover in this action. The tenants are admitted to be in the possession, and that possession, whether rightful or wrongful, the law will not suffer to be disturbed unless the demandants show a seizin within the time mentioned in their writ.

The seizin which it is necessary for them to prove in order to maintain this action, may be either rightful, as by a descent, a devise or a conveyance from those who had a seizin, or it may be wrongful, commencing in a disseizin of those who were seized.

The evidence of seizin upon which the demandants rely, arises out of a devise in the will of *Nicholas Gilman*, jr. who is admitted to have been seized at the time of his death. By that devise the demandants allege, that an estate vested in the trustees mentioned in the will to the use of the new parish when it should be incorporated; and that upon its incorporation in 1755 the use was vested or executed by the statute of uses which gave the parish the legal and actual seizin

of the estate. The correctness or incorrectness of this construction of the devise will be most readily seen by a view of the nature of uses and trusts, and of the principles of law which have been settled in relation to them.

Uses and trusts at common law were created by vesting the legal estate by devise or conveyance in one person to the use, or in trust for another. The person seized to the use, or trustee, was in legal consideration owner of the estate, although he had no beneficial interest whatever in it. He held the legal estate for the benefit of the *cestui que* use or trust, who was in equity entitled to the whole beneficiary interest, although he had no legal seizin or title. The courts of common law took no notice of the interest of the *cestui que* use or trust, but his rights were recognized and enforced in the courts of equity.

To remedy obvious evils arising out of this separation of the legal estate from the equitable interest or right to the profits and uses of the estate, the statute of 27th of Henry 8th, commonly called the Statute of Uses, or for transferring uses into possession, was enacted. Its object was to unite the legal estate to the beneficiary interest in the person of the *cestui que* use or trust. By force of this statute when the legal ownership vested in the trustee, it was instantaneously transferred to the *cestui que* use or trust, making him to every intent and purpose, in law as well as equity, the owner, and seized of the estate. This statute provides that the *cestui que* use shall be deemed to have the same seizin and possession in the estate, which he before had in the use. In the construction of this statute, courts of law have uniformly held, that where it was necessary to effect the object of the grantor or devisor that the legal estate should remain in the trustees, or where the trustees were vested with any discretionary powers as to the appropriation of the estate, income or beneficiary interest, the statute did not execute the use, but the seizin and legal estate remained in the trustees as at common law. *Saunders on Uses* 62. 174.—2 *Black. Com.* 336.—2 *T. R.* 444. *Silvester* vs. *Wood.*—7 *T. R.*

652. *Harton* vs. *Harton & al.*—7 *Mass. Rep.* 198. *Newell* vs. *Wheeler.*

The New Parish in Exeter
*vs.*
Odiorne & al.

The law respecting uses and trusts, as modified by the statute of the 7th of Henry 8th, was received and has been in practice as the law of this State, from the first organization of its government, so far as the nature and powers of our judiciary establishments could carry it into effect. Our judiciary, which can hardly be said to be invested with any chancery powers, cannot enforce a specifick execution of trusts. The only remedy which the *cestui que* trust has against the trustee is therefore by an action of assumpsit founded on the implied promise of the trustee that he will execute the trust, evidenced by his acceptance of such trust.

By the will of *Nicholas Gilman,* jr. this estate was devised to the trustees named in the will, to be improved by them for and towards the support of a minister or ministers who might thereafter be settled in the ministry in the church which usually met in the new meeting-house, or for any other pious use, according to their discretion. This devise, by the most plain and unequivocal language gives the trustees a discretionary power as to the appropriation of the income of the estate. They are to appropriate it, not to the support of a minister, &c. exclusively, as the plaintiffs construe the devise, but to the support of a minister, &c. or for any other pious use, according to their discretion. If they appropriate the income to either of these objects, they execute the trust according to the words and intent of the devise.

The words of the devise are totally irreconcileable with an intention to give an absolute and exclusive interest to the support of the ministry or to the parish. One half of the sentence must be expunged to make the devise susceptible of the construction contended for by the demandants. We know of no rule in the construction of devises or of language, which would not justify us in discarding the words, " to the use of the minister," as much as the words, " or to any other pious use," from this devise.

Why should the testator use the words, "or any other pious use," if his intention would appropriate the property exclusively to the support of the ministry or to the parish. Why mention the exercise of a discretion in the appropriation, if his intention was to give the trustees no such discretion.

That the testator looked forward to the incorporation of this society as a parish ; or, if incorporated, intended to vest property in the corporation, seems to be a mere assumption of the demandants.     There is nothing in this will which affords any foundation for the opinion.

The will affords abundant evidence that the testator looked forward with anxiety to events which appeared then likely to be remote.    He provided for the event of the death of two of the trustees—an event which did not take place till about forty years afterwards.   On that event he directs that the deacons of the church should be trustees of the fund.    He further provides that if there should then happen to be no deacons of the church, the members of the church (not the society or parish) should, from time to time, appoint trustees.

The vesting the power of appointing trustees in this event in the members of the church, of which the devisor and the trustees of his own appointment were members, seems to prove that he placed more confidence in the members of the church than of the society, and affords a strong argument against the opinion that the testator intended to vest the property in the society or parish, a majority of whom might not be members of the church.

If the testator had contemplated the incorporation of the society as a parish, and intended that this estate should on that event vest in the corporation, it is hardly to be conceived that he, who seemed so anxiously provident on the subject of the appropriation of this property, should have omitted to give the slightest intimation of such expectation or intention in his will.   Without violating the intent of the

plain and explicit language of this devise, we cannot but say that it was the intention of the testator that the trustees should appropriate the income of this property either to the support of the ministry in this society, or for any other pious purpose, as they in their discretion should think best.

Agreeable to the legal principles already suggested, and authorities cited, this therefore was not a use executed by the statute in the *cestui que* use, but a trust unexecuted by the statute. The legal estate vested and remained in the trustees, to enable them to effectuate the objects of the devise. If the estate did not vest in the parish by the devise, it is clear that it could not vest in it by the act of the legislature under which the defendants claim, because that act does not recognize the parish as having any interest in, or control over this estate ; and it expressly transfers to the new trustees and their successors the right to use and improve the property "for the sole purposes mentioned in the will."

It is not necessary to determine whether the legislature had or had not power to vest this estate in the new trustees, because their possession is *prima facie* a sufficient defence : nor is it necessary to determine whether upon the death of two of the original trustees, the estate reverted to the heirs of the devisor, or vested in the deacons of the church, because the demandants claim under neither.

The demandants gave in evidence some facts from which they would infer that both the old and new trustees acknowledged the title to this estate to be in the parish, and that although the trustees might be considered as in fact in possession, yet this possession was the possession of the parish, being under an admission of their title. One of these was the long possession of the property by Mr. *Rogers*, the minister of the new parish ; but it appears that Mr. *Rogers* went into possession under the trustees before the parish was incorporated : his possession was therefore in legal consideration the possession of those who permitted his entry; he held under the trustees, in whom remained the legal seizin. The

The New Par-
ish in Exeter
vs.
Odiorne & al. length of a possession so acquired is wholly immaterial; it could give no title. The case affords no evidence either of a subsequent transfer of the legal seizin to the demandants, or that Mr. *Rogers* actually disseized the trustees to the use of the parish. The possession of Mr. *Rogers* therefore gave the parish no title. The demandants rely upon their having kept the buildings upon the premises in repair from the time of the incorporation of the parish till the death of Mr. *Rogers*, as evidence that Mr. *Rogers* was in possession under the parish. This circumstance is entitled to but little consideration, when we advert to the fact that the trustees had permitted Mr. *Rogers* to take the profits of the whole trust fund, and had left themselves without means to make repairs.

From these circumstances the natural inference is that it must have been expressly agreed or tacitly understood that he should not suffer the property to deteriorate whilst in his possession. It is probable the parish gratuitously made these repairs as an inducement to the trustees to permit their minister to retain the possession, or to save him the expense of performing the express or implied condition of retaining that possession. If, however, the parish made these repairs under an opinion that they owned the property, it affords no evidence of their possession, when opposed by the direct evidence of the possession of the trustees, and that they put Mr Rogers into possession, and in defect of all evidence that either Mr. *Rogers* or the trustees ever admitted their title. Another fact on which the demandants rely with the same view is, that the new trustees, when they leased to *Lakeman*, inserted in the lease a condition that if the premises should be wanted for a minister of the new parish the lessee should surrender them. This circumstance when considered will be found perfectly consistent with the defendants' claim to the exclusive ownership and possession of the property. The support of the ministry in this society was one of the objects to which the attention of the trustees

was expressly directed by the donor. And it was to be expected that the trustees should choose to insert a condition which would enable them to afford to the future clergyman of their own parish, whom they might consider a proper object of the testator's bounty, the use of this property. The condition or right to avoid this lease, was not reserved either to the minister who might be settled, or to the parish, but to the trustees, and they alone had the power to take advantage of it. There is no evidence that the parish ever attempted to control or render the trustees accountable for their management of this property ; no evidence that the trustees ever consulted the parish in relation to their management of it, or rendered them any account of their receipts and expenditures in relation to it, either when it was, or was not occupied by the clergyman of the parish. The trustees permitted the daughters of their former minister to occupy a part of the property, for aught that appears without the consent of the parish. They voted to give Mr. *Brown*, the minister afterwards settled in the parish, a certain sum out of the rent of this property, (not the whole rent) a fact utterly inconsistent with the idea that either the parish or Mr. *Brown* then supposed that he or they had a legal right to this property, or that the trustees then considered themselves in any way accountable to the parish for their disposition of it.

We have already seen that by the devise the old trustees had the legal seizin in this estate, and that the act of the legislature, if it had any operation, transferred the same title and seizin to the new trustees, and that they, and those who claim under them, have ever since had the actual possession. It follows that the demandants never had any rightful seizin in the premises. If they had such seizin as their declaration alleges, and as is necessary to support this action, it must have been acquired by a disseizin of those who were lawfully seized ; but the evidence does not show any title acquired by disseizin.

The possession of Mr. *Rogers* was by consent of, and

<div style="margin-left:margin">The New Parish in Exeter *vs.* Odiorne & al.</div>

not adverse to, the trustees, and no length of possession so acquired can give a seizin. The possession of Mr. *Rogers*, too, ended much more than twenty years before the commencement of this suit, so that if it had been adverse it could not have availed the demandants. Mr. *Brown* never had any actual, or even constructive possession; for there is no evidence that either the defendants or *Lakeman*, their tenant, acknowledged any title in, or holding under Mr. *Brown* or the parish.

The demandants have altogether failed to prove the essential allegation in their declaration, that they were seized of the premises within twenty years next preceding the date of their writ.

The verdict must therefore be set aside, and a verdict entered for the tenants.

*Jer. Smith* and *Sullivan* for the plaintiffs.

*E. Cutts*, jr. and *Farrar* for the defendants.

The chief justice, having been of counsel, did not sit in this cause.