## BELL *vs.* SCAMMON & a.

A devisee in a will takes a fee in land by a devise, on condition of his paying all the testator's debts and the legacies bequeathed by the will.

Also, by a devise to him of all the testator's *estate.*

Whether, where a devise is made to A in fee, and if he should die and have no male issue, then over, the limitation over is void by way of executory devise, on account of its remoteness, *quære ?*

If the words importing a failure of issue are restrained to issue living at the death of the first taker, the limitation over is good.

The words are thus restrained when the death of the first taker is confined to a given age, and where there was a devise in fee; but if the devisee " should die before he arrives to the age of twenty-seven years, and have no male issue," then over, the limitation over was held valid.

And where a testator devised to his son in fee, but if he should die before he ar-

rived at the age of twenty-seven years, and have no male issue, then that the testator's daughters should have two third parts of the land, and his son's heirs the remaining third part, it was—*Held*, that the limitation over to the daughters was valid, because the testator, by referring to the heirs of his son, meant to designate his death as the period when the limitation to the daughters should take effect, and thus the failure of issue was restrained to issue living at the death of the first taker.

A testator died in the year 1817, leaving a daughter, to whom he devised land. She died in the year 1826, leaving her mother and sister surviving her.—*Held*, that her property could not be regarded as *a deceased child's share in the estate*, according to the act of July 2d, 1822, as the will had taken effect before the passage of the act, but must be considered as intestate estate, the disposition of which was the same by the act of 1822 as by that of 1789, and that her mother was entitled to her property as her next of kin.

A freehold *in futuro* may be conveyed either by a deed of bargain and sale, or by a covenant to stand seized.

The grantee in a deed had married the daughter of the grantor, by whom he had issue, but at the date of the deed both his wife and child were dead. The deed was made in consideration " of the love and good will I bear said Lang as my son-in-law."—*Held*, that the consideration was sufficient to support a covenant to stand seized.

WRIT OF ENTRY, to recover several tracts of land. The tenants pleaded the general issue, and by the agreement of the parties the case was submitted to the court for decision upon the following facts.

Hezekiah Scammon died seized of the demanded premises, on the 9th day of April, 1817. He left three children surviving him, James, Comfort and Melinda, and also his wife, Leah Scammon. James died on the 3d day of April, 1819, aged twenty-one years, and leaving one child, Jane, who afterwards married Bickford, one of the tenants. Comfort married David Lang on the 2d day of December, 1819, and died on the 8th day of March, 1823, aged twenty years, and leaving one child, James, who died on the 4th day of February, 1825, aged five years. Melinda died unmarried, on the 10th day of December, 1826, aged 17 years.

Hezekiah Scammon, by his will dated on the 28th day of January, 1817, devised to his wife Leah, " the improvement and income of the one half of my dwelling-house, barn, shed and hog-pen, two thirds of all my lands, so long as she remains my widow,

two cows," &c.   He devised to his daughters, or "either of them who should remain unmarried, the free use and improvement of the northeasterly front room in my dwelling-house, and the adjoining bed-room, with a convenient privilege in the kitchen, cellar, oven and well, so long as they or either of them shall remain single and unmarried."

He devised to his son James, "his heirs and assigns, my workshop, with the land it stands on, and the tools and stock belonging to it.   Also I give him the improvement of all my real estate not otherwise disposed of in this will, during the term of his mother's widowhood; and I also give and bequeath to him, his heirs and assigns, all my real and personal estate, not otherwise disposed of in this will; he to come into possession at the decease or marriage of my wife, on condition of his paying all my just debts, and the legacies herein ordered to be paid; but if my said son James should die before he arrives to the age of twenty-seven years, and have no male issue, then it is my will that each of my daughters should have one third part of my real estate, and his heirs the other third part."

On the 13th day of February, 1828, Leah Scammon conveyed by deed to David Lang, "in consideration of one dollar, and the love and good will I bear said Lang as my son-in-law," with covenants of ownership, right to convey and against incumbrances, all her right and interest in the estate of her late husband, consisting of buildings and lands, "he, the said Lang, to take full possession at my marriage or death."   This deed was recorded on the 15th day of February, 1828.

On the 2d day of April, 1828, by a deed recorded on the 28th day of December, 1829, David Lang released to Benjamin Lang "all my right, title and interest, claim and demand of, in and unto the real estate of Hezekiah Scammon, late of Stratham aforesaid, deceased, consisting of land and buildings the late Hezekiah died in possession of."

On the 27th day of April, 1839, Benjamin Lang released to the demandant the premises described in the declaration.

Leah Scammon, the widow of Hezekiah, died on the 8th day of December, 1838.

On the 8th day of June, 1839, Bickford, and Jane his wife, conveyed to John Scammon with warranty the demanded premises, which ever since the decease of Leah Scammon have been in the possession of Bickford, but Mrs. Scammon resided on them until her decease. James Scammon paid all the legacies bequeathed by the will, and so long as he lived performed all the duties required by the will. John Scammon, as executor of Leah Scammon, has a title acquired by the levy of an execution against David Lang, on the 13th day of October, 1839, to one sixth part in common and undivided of one of the tracts of land described in the writ, provided David Lang ever owned so much interest in said land. Prior to this levy, Leah Scammon bequeathed to Jane Bickford all her personal estate, including the debt to satisfy which the above levy was made.

*James Bell*, for the demandant. The demandant claims two thirds in common of the demanded premises, except one sixth of the tract first described in the writ, which has been taken on execution for the debt of David Lang. He contends that by the will of Hezekiah Scammon, after the decease of his son James Scammon under the age of twenty-seven years, and without male issue, and after the death of Leah Scammon, Comfort Lang and Melinda Scammon each succeeded to one third part of his real estate, and afterwards the right of Comfort Lang through James S. Lang, her son, descended to David Lang, the father of James, while the interest of Melinda, upon her decease under age and unmarried, descended to her mother, Leah, who conveyed it to David Lang, and the demandant now has David Lang's title in both portions of the land, by his deed from Benjamin Lang.

It is objected by the tenants—

I. That by the words of the devise, James Scammon took an indefeasible estate in fee in remainder in the real estate.

1. But his interest, by the express terms of the will, was an estate during his mother's widowhood only, with remainder by way of executory devise in two thirds to the daughters of the testator in fee, and in the other third to the heirs of John Scammon. *Bowers* vs. *Porter*, 4 *Pick.* 198. The rule in Shelley's

case has never been applied to the case of an estate to one *pour auter vie*, with remainder to his heirs in tail, which is the nature of the estate here devised to James Scammon. This estate, upon the decease of the tenant *pour auter vie* during the life of the person for whose life the estate is to continue, his heirs take it, if at all, as special occupants, and not being an inheritance it cannot be entailed. *Doe* vs. *Luxton*, 6 *T. R.* 289 ; 1 *Hill. Abr.* 43.

2. The devise by the testator of his " real estate" to his daughters gave them an estate in fee. *Davie* vs. *Stevens, Dougl.* 321, 2. That an estate to the devisee and his heirs is an estate tail by implication, whenever as in this case there are subsequent expressions in the will showing an intention that the heirs of the body only of the devisee shall take, is clear upon authority. 4 *Kent's Com.* 200, *(note;)* 4 *Cruise* 270, 274, 278, 281, 283 ; *Doe* vs. *Rivers*, 7 *T. R.* 276 ; *Doe* vs. *Smith*, 7 *T. R.* 531 ; *Doe* vs. *Cooper*, 1 *East* 229 ; 2 *Hill. Abr.* 28, 29, 34 ; 2 *Bac. Abr.* 260, " *Estate Tail*" ; *Bowers* vs. *Porter*, 4 *Pick.* 198. Even, therefore, if the estate devised to James Scammon is an estate tail, as it may be according to the rule in Shelley's case, a remainder to the testator's daughters and to James Scammon's general heirs, could be well limited after it, either by deed or devise. 2 *Bl. Com.* 164 ; 4 *Kent's Com.* 198, 200.

3. If the estate devised to James Scammon were a fee simple, the devise over to the testator's daughters was good as an executory devise by which a fee might be limited upon a fee. 2 *Hill. Abr.* 535 ; *Fearne on Rem.* 90, 95, 318, 319 ; *Co. Litt.* 278, *a ; Doe* vs. *Scudamore*, 2 *B. & P.* 289 ; *Blanchard* vs. *Brooks*, 12 *Pick.* 47.

II. The tenants contend that the charge of legacies, &c. upon the estate devised to James Scammon, enlarges his estate to a fee simple.

1. But this rule of construction is never applied where both real and personal estate out of which the legacy may be paid, is given to the party charged with the payment. *Doe* vs. *Allen*, 8 *T. R.* 497 ; 5 *T. R.* 558 ; 4 *Cruise* 316, § 30 ; 8 *Johns.* 141, *Jackson* vs. *Harris.*

2. Nor does it apply in any case where there is an express limitation of an estate less than a fee, but only where the devise is indeterminate, there being no words of limitation. The object of the rule is only to supply defects of expression. 6 *Johns.* 192; 12 *Wend.* 82; 1 *Pick.* 318; *Bowers* vs. *Porter*, 4 *Pick.* 198; 9 *Mass.* 165. Where the interest devised is limited by express and apt words, it is immaterial, in respect to the construction of the devise, whether the gift is advantageous to the devisee or otherwise. He may always at his pleasure refuse the devise.

III. The tenants contend that Mrs. Bickford succeeds to Melinda's share of the property, either by descent or devise.

1. We submit that this depends, not on the present statute regulating descents, but upon that passed February 3, 1789. The present statute took effect January 1, 1823, and James Scammon died April 3, 1819. At his decease Comfort Lang became entitled by the terms of the devise to a vested reversionary estate in fee in one third part of the testator's lands. Or if, as the tenants conceive, the rule in Shelley's case is applicable here, then she became seized of a present estate in fee in one third part of that third of the lands which was not devised to Leah Scammon during her widowhood, and entitled to a reversionary estate in fee in the other two third parts. 4 *Kent's Com.* 202, 3; 1 *Salk.* 232; *Chapin* vs. *Marvin*, 12 *Wend.* 538; *Fearne* 329, 331. In whichever way her interest in the real estate may be regarded, it was not in the power of the legislature by a law passed afterwards (1823) to change the tenor of this land for one less valuable or advantageous. Melinda's estate in the land, by this statute, if it applies here, was reduced to an estate descendible to her heirs in the descending line, or, in default of such heirs, to her brothers and sisters and their lineal heirs, which would be necessarily less valuable than an ordinary fee simple estate, to which she succeeded on the death of James Scammon. The proviso in the former act, providing for certain deviations from the general rules of descent, applied to intestate estates only.

2. The true construction of the present act does not establish

the tenant's position. We should advert to the law as it stood before the act. By the act of 1789, Melinda's share would have descended to her brothers and sisters ; if there were none, to her mother, in exclusion of nephews and nieces. We contend that the present act changes the law in no particular except in admitting the heirs of deceased brothers and sisters to a share in the inheritance, and in extending the provision to the case of testate estates, and neither statute applies except where there are no surviving brothers or sisters. The intention was to prefer the brothers and sisters, but not the nephews and nieces and more remote relations of the intestate, to the mother.

IV. The tenant objects to the conveyance from Leah Scammon to David Lang, that it is void because it attempts to create a freehold estate to commence *in futuro.*

1. But the deed is not open to this objection. It merely provides that the grantee shall come into full possession at the grantor's death or marriage. ' The effect of the deed at farthest is that the grantor reserves a concurrent possession with the grantee during her life. Or it may be construed a covenant to ensure the possession to the grantee at Mrs. Scammon's death, notwithstanding any existing or supposed incumbrances. It is not a reservation of a life estate.

2. The deed is valid as a bargain and sale, or as a covenant to stand seized to the use of the grantee, and it may have this effect on account of the relation of the parties.

It is settled in New-York that a freehold, to commence *in futuro,* may be conveyed by an instrument taking effect as a bargain and sale, overruling the cases to the contrary. 2 *Hill. Abr.* 321 ; *Jackson* vs. *Dunsbagh,* 1 *Johns. Cas.* 94. The future use is supported by the seizin of the bargainor. 4 *Kent's Com.* 299 ; *Chamberlain* vs. *Crane,* 1 *N. H. Rep.* 64 ; *Roe* vs. *Tranmer,* 2 *Wils.* 75.

There is a sufficient consideration for the deed to operate as a covenant to stand seized. 2 *Hill. Abr.* 324. Such a conveyance has been sustained in favor of remote relatives, as of a cousin five degrees removed ; 4 *Cruise* 98 ; 1 *Harris & J.* 527 ; in favor of the grantor's brother's wife ; *Plowd.* 300, *Sharring-*

*ton* vs. *Stratton;* and of the future wife of the grantor's son, *Bould* vs. *Winston,* 2 *Roll. Abr.* 786 ; 4 *Dane's Abr.* 220.

*Christie,* for the tenants. James Scammon had an indefeasible remainder in fee in that part of the estate devised to him, which was not defeated by the devise over. A fee is given, in terms, to him, " his heirs and assigns," and a devise of " the remainder of my real and personal estate" is broad enough to carry the fee. The devisor is presumed to intend a devise beneficial to. the devisee ; but according to the construction of the demandant, James would take nothing, and would be compelled to pay the debts and legacies. He thus would be a loser, unless the estate devised were a fee. 6 *Cruise* 675 ; 6 *Cowen* 441 ; 6 *Johns.* 492. That a devise of land, charged with the payment of debts and legacies, will pass a fee, is well settled. *Com. Dig. Estate by Dev.,* (*n*) 4 ; 8 *T. R.* 1 ; *Cro. Eliz.* 330 ; 5 *T. R.* 558 ; 4 *East* 496 ; 5 *East* 97 ; 3 *T. R.* 356 ; 18 *Johns.* 31.

If this be an unconditional fee, the devise over is void, because all the estate is disposed of. It may be either a fee determinable on the happening of the contingency mentioned in the will, or a fee tail male. And if the devise over is good, by way of executory devise, or as a contingent remainder, all Melinda's interest vested in her niece Jane, notwithstanding the argument of the demandant that the act of 1822 cannot apply.

GILCHRIST, J. A series of judicial decisions extending through a long period of years, has settled the principles by which this case must be governed and the rules by which the will must be construed, the application of which is not very difficult.

The testator devises to his wife " the improvement and income of two thirds of all his lands so long as she remains his widow." She then holds two thirds of the lands during her widowhood.

He then devises to James Scammon, " his heirs and assigns, my workshop, with the land it stands on." This is an express devise in fee, unconnected with and independent of any condition attached to the subsequent devise. He then proceeds : " also I give him the improvement of all my real estate not oth-

erwise disposed of in this will, during the term of his mother's widowhood." The estate "not otherwise disposed of" was one third part of the testator's lands. He had given Mrs. Scammon the use of two thirds of his lands during her widowhood, and deducting the workshop and the land it stood upon, James would hold the remaining third during his mother's widowhood. Thus all his lands were disposed of so long as Mrs. Scammon should remain his widow. Thus far the will is free from any doubt.

The next provision is the material one, and is that about which the controversy has arisen. It is as follows: " I also give and bequeath to him, (James,) his heirs and assigns, all my real and personal estate not otherwise disposed of in this will, he to come into possession at the decease or marriage of my wife, on condition of his paying all my just debts and the legacies herein ordered to be paid ; but if my said son James should die before he arrives to the age of twenty-seven years, and have no male issue, then it is my will that each of my daughters should have one third part of my real estate, and his heirs the other third part."

In this provision there are several clauses which require consideration.

James was to come into possession of the estate then undisposed of, at the death or marriage of Mrs. Scammon. The possession refers to Mrs. Scammon's two thirds, as he already had possession of one third. These words are referred to here for the purpose of remarking that they convey no future interest, the estate having already been devised to him by the words preceding those which refer to the possession.

But this remainder in fee is devised to him " on condition of his paying all my just debts and the legacies herein ordered to be paid."

Now a fee is conveyed to James Scammon by this devise in three different modes. In the first place, the property is conveyed to " him and his heirs." It needs no authorities at this day to show that these words convey the fee. Where there are no words of limitation, courts resort to other parts of the will in order to ascertain from them the intention of the testator, and a

fee is often held to be conveyed by implication, but this is done only to supply defects of expression. *Stevens* vs. *Winship,* 1 *Pick.* 326 ; *Lithgow* vs. *Kavenagh,* 9 *Mass.* 165 ; *Doe* vs. *Fyldes, Cowp.* 841 ; *Tanner* vs. *Livingston,* 12 *Wend.* 95. Where a fee is devised by express terms, it is unnecessary to imply it. In the present case, there is a personal charge upon the devisee, and for that reason also he takes the fee. 4 *Kent* 540 ; *Doe* vs. *Holmes,* 8 *T. R.* 1 ; *Van Alstyne* vs. *Spraker,* 13 *Wend.* 578 ; *Fox* vs. *Phelps,* 17 *Wend.* 393 ; *Jackson* vs. *Bull,* 10 *Johns.* 148. The reason for this is, that if the devisee did not take a fee, he might be a loser by paying the debts, and the testator is presumed to intend that his gift shall be beneficial to the devisee. *Leavitt* vs. *Wooster,* [14 *N. H. Rep.* 550.]

A fee is also conveyed, because the testator has devised all his estate, and this expression is sufficient without words of limitation. *Fogg* vs. *Clark,* 1 *N. H. Rep.* 163 ; *Brown* vs. *Wood,* 17 *Mass.* 68 ; *Randall* vs. *Tuchin,* 6 *Taunt.* 410 ; *Cliffe* vs. *Gibbons,* 2 *Lord Raym.* 1324 ; *Grayson* vs. *Atkinson,* 1 *Wilson* 333 ; *Hopewell* vs. *Ackland,* 1 *Salk.* 239 ; *Doe* vs. *Allen,* 8 *T. R.* 503 ; *Leavitt* vs. *Wooster,* [14 *N. H. Rep.* 550.]

The next inquiry relates to the effect of the limitation over to the daughters after the devise to James in fee. The will provides that " if he should die before he arrives to the age of twenty-seven years, and have no male issue," then each of the daughters should have one third of the real estate.

In the construction of this limitation, the intention of the testator is undoubtedly, as has often been said, the pole star by which the court is to be guided. " Notwithstanding, there has been for ages a system of legal construction established on the subject of devises, by which when a certain form of words is used, a construction is put upon that form, and adhered to for the sake of certainty." Lord *Mansfield, Pistol* vs. *Riccardson,* 3 *Dougl.* 361 ; *Parsons,* C. J., *Ide* vs. *Ide,* 5 *Mass.* 501 ; Lord *Kenyon, Doe* vs. *Wright,* 8 *T. R.* 64.

There are numerous authorities, that where there is a devise to a man and his heirs, but if he should die *without issue,* or *having no issue, or leaving no issue,* then over, that the first devisee

Bell *v.* Scammon.

takes an estate tail, with a contingent remainder to the subsequent devisee. The words, *without issue,* &c. have been construed to mean an indefinite failure of issue, and the remainder over has been held void as an executory devise, because too remote, as tending to a perpetuity, for the descendants of the first taker might not become extinct for hundreds of years. See 4 *Kent* 274; *Ide* vs. *Ide,* 5 *Mass.* 500; *Patterson* vs. *Ellis,* 11 *Wend.* 259; *Doe* vs. *Ellis,* 9 *East* 382; *Romilly* vs. *James,* 6 *Taunt.* 263; *Tenney* vs. *Agar,* 12 *East* 253; *Purefoy* vs. *Rogers,* 2 *Saund.* 380; *Doe* vs. *Morgan,* 3 *T. R.* 765. But see, also, *Hall* vs. *Chaffee,* [14 *N. H. Rep.* 215.]

If the words importing a failure of issue are restrained to issue living at the death of the first taker, there is no question that the limitation over is good as an executory devise.

One class of cases in which the words are clearly thus restrained, is where the death of the first devisee is confined to a given age; as is the case with this devisee, James Scammon, the limitation over being if he "should die before he arrives to the age of twenty-seven years, and have no male issue." *Eastman* vs. *Baker,* 1 *Taunt.* 174; *Toovey* vs. *Bassett,* 10 *East* 460; *Glover* vs. *Monckton,* 3 *Bingh.* 15.

On another ground, also, the limitation over is valid. The expressions in the will show that the testator intended that the words, *have no male issue,* should refer to the state of things existing at the death of the devisee. If he should die without such issue, his heirs are to take one third part of the lands. Who his heirs might be must be determined upon his death. That, then, is the period to which the testator refers. It might indeed be said that the period for ascertaining who his heirs might be, was after all his descendants should become extinct. But this is not so obvious or so rational an exposition of the will as the other construction; for in order to adopt it, we must disregard the first class of heirs entirely, and the first period when the devisee can be said to have heirs, in a legal sense, although they answer all the requirements of the will. We think the testator intended the death of James Scammon, without issue living at the time of his death, and that the limitation over to the daughters is valid by way of executory devise.

Upon the death of James Scammon, his daughter Jane, the wife of the tenant, took a fee in the property devised to her father, by the operation of the rule in Shelley's case, a freehold estate having been given him by the will, and the words, " his heirs," being words of descent and not words of purchase. This share the tenant now holds in her right.

Comfort Scammon having married David Lang, her share descended upon her death to her son James, and at his death after his mother, it was inherited by his father, David Lang, as his next of kin, and the demandant now holds it by virtue of a conveyance from Lang.

A question is made in the case as to the share of Melinda. She died under age, and unmarried, in the month of December, 1826. In order to ascertain who inherited her property, it will be necessary to examine our statutes regulating descent.

By the act of July 2d, 1822, *N. H. Laws* 351, (*Ed. of* 1830,) it was provided, that an intestate estate should descend in equal shares among the children and their representatives, and if there were no children it should be inherited equally by the next of kin ; provided, however, that when any of the children of such intestate should die before the age of twenty-one years, and unmarried, or when any child of a person deceased testate should die before twenty-one years of age, and unmarried, *such deceased child's share in the estate* should, although its other parent be alive, be inherited by its surviving brothers and sisters, &c.

The act of February 3d, 1789, *N. H. Laws* 207, (*Ed. of* 1815,) contains no provision relating to the descent of a deceased child's share in a testate estate. This act was in force in the year 1817, when James Scammon died. It permitted an estate to be disposed of according to the will of the testator, but it did not prescribe ' the disposition of a share which a devisee might take under a will. Upon the death of her brother James, in 1819, Melinda took under the will by way of executory devise. If the act of 1789 had remained in force, the share or property of Melinda would not have been disposed of upon her death as *a share in her father's estate,* but would have gone as *her estate* to her next of kin. The fact that she derived her estate from her

father would have no more effect upon its descent as her property, than its derivation from any other source, the will of a stranger for instance. In this State we never look to the source whence the estate was derived, to determine who shall inherit it, except in cases where the statute has made that circumstance material, and it is not made so in this instance. *Parker* vs. *Nims*, 2 *N. H. Rep.* 461. Melinda took as a purchaser under the will, and would have become a new stock of descent.

The act of 1822 had no retrospective operation so as to regulate the disposition of Hezekiah Scammon's estate, for that estate had already been settled, and all, the provisions of the will had been carried into effect before the passage of the act. The provisions of the statute had no relation to what once was, but which no longer remained, *a share in the estate*. Melinda's property had ceased to possess that quality, and was simply *her property*, her interest in the land as an executory devisee. Then being a purchaser, her property was not in a condition to be operated upon by the provision relative to shares in testate estates. The general provisions of the act of 1822, regulating the descent of intestate estates, furnished the rule for the disposition of her property at her death in 1826, she being the *stirps*. These provisions gave to the next of kin, precisely as the act of 1789 would have done, and her mother, as next of kin, took all her property by the operation of the general rule laid down in the statute, the case not falling within any of the exceptions. *McAfee* vs. *Gilmore*, 4 *N. H. Rep.* 391.

Melinda's property having thus been inherited by her mother, Mrs. Scammon, the latter conveyed all her interest in the estate to David Lang, in the month of February, 1828. The deed contained the following clause, " he, the said Lang, to take full possession at my marriage or death," and was in consideration of " one dollar and the love and good will I bear David Lang, as my son-in-law."

It was contended that this deed is void, as attempting to convey a freehold estate *in futuro*. The deed undoubtedly reserves an estate to the grantor during her life. This is its obvious construction, and the remainder after the expiration of the life estate

is all that the grantee took by the deed. There seems to be no reason why it may not operate under the statute of uses, both as a deed of bargain and sale, and as a covenant to stand seized to the use of the grantee, by either of which modes a freehold *in futuro* will pass. In neither of them are any formal words required. So long ago as the time of *Levinz* it was said, " that the judges of late years have had more consideration of the substance, viz. the passing of the estate, than the shadow, viz. the manner of passing it." 3 *Levinz* 372. There is a pecuniary consideration, which, however small, is sufficient in a deed of bargain and sale. The New-York decisions have settled there that this deed will pass a freehold *in futuro*. *Jackson* vs. *Staats*, 11 *Johns.* 337 ; *Jackson* vs. *Swart*, 20 *Johns.* 85 ; *Jackson* vs. *McKenny*, 3 *Wend.* 233 ; *Rogers* vs. *Eagle Fire Co.*, 9 *Wend.* 611. And in two recent very acute and learned English treatises, *Cornish on Uses* 44, and *Burton on Real Prop.*, *pl.* 145, it is stated, and the authorities are cited, that a deed of bargain and sale will convey a freehold *in futuro*.

In the case of *Wallis* vs. *Wallis*, 4 *Mass.* 136, it is said that " by a common law conveyance a freehold cannot be conveyed *in futuro*," but no reference is made to the fact that a deed of bargain and sale derives its effect from the statute of uses. In the case of *Welch* vs. *Foster*, 12 *Mass.* 96, it is held that such a deed will not pass a freehold *in futuro*, and also in *Parker* vs. *Nichols*, 7 *Pick.* 115. In this case it is said by Mr. Justice *Jackson* that the statute of uses, 27 *Henry* 8, had not been adopted in Massachusetts. It has, however, been adopted in this State. *Chamberlain* vs. *Crane*, 1 *N. H. R.* 64 ; *New. Par. in Exeter* vs. *Odiorne*, 1 *N. H. Rep.* 237 ; *French* vs. *French*, 3 *N. H. Rep.* 234. The point is, however, so learnedly reasoned out by Mr. Chancellor *Walworth*, in the case of *Rogers* vs. *Eagle Fire Co.*, 9 *Wend.* 625, 631, and the authorities so fully examined, showing that a freehold estate *in futuro* may be thus conveyed, that the references above made in our opinion authorize the position that the deed in this case has that operation.

Whether the deed can operate as a covenant to stand seized, depends on the question whether the consideration be sufficient.

If it can operate as such a covenant, it will convey a freehold *in futuro*, upon all the authorities. The consideration is " the love and good will I bear David Lang as my son-in-law." James, the son of Comfort and David Lang, and the grandson of Mrs. Scammon, had died before the date of this deed. There was no actual relationship then existing between Lang and Mrs. Scammon, but he had been the husband of the grantor's daughter, and the father of her grandson, both of whom were then dead.

In the case of *Gale* vs. *Coburn*, 18 *Pick.* 397, the daughter of a grantor had married the grantee, but died before the date of the deed, leaving, however, two children, who were then living. A doubt was suggested whether, after the death of the wife, the consideration of marriage could be regarded as still subsisting. But it was unnecessary to decide the point, because there was a consanguinity between the grantor and his grandchildren, and *Shaw*, C. J., said that " the grantor might well suppose that the most effectual mode of advancing his grandchildren was to vest the property in one, bound by every consideration of legal obligation, moral duty, and parental affection, to provide for their maintenance, education and advancement."

If the above be a sufficient reason for holding the consideration to be sufficient, and the boundaries which exclude persons as too remote to be within its influence have never yet been defined, the consideration may be sufficient in the present case. That the grantee had been the husband and father of those nearly allied to her by ties of blood, and had bestowed on them the kindness and care which they would naturally call forth and require, would appeal as strongly to the feelings of the grantor as would the expectation of advantage to the grandchildren of the grantor in the case of *Gale* vs. *Coburn*. And there is good authority for going as far as this case requires. In *Sheppard's Touchstone* 511, 512, it is said that if one, " in consideration of nature, kindred, blood or marriage, covenant to stand seized to the use of himself, his wife, or intended wife, children, brothers, sisters, cousins, or their wives, or intended wives, these are good considerations." If the intended wife of a man's cousin come within the consideration of marriage, the husband of a deceased daughter would seem to be

equally so, and in the absence of any authorities to the contrary we think the consideration in this case is sufficient.

David Lang having thus acquired a title to the property devised to Melinda, conveyed it to Benjamin Lang, who conveyed it to the demandant, and the latter is entitled to judgment for two thirds of the land, with the exception of the tract levied upon by John Scammon, as stated in the case, in relation to which no question is made.

*Judgment for the demandant.*